Crowe Name Plate and Manufacturing Company, Appellant, v. Willard R. Dammerich, Appellee.

Opinion filed January 4, 1935.   Rehearing denied February 25, 1935.

WHEELER, OEHMKE & DUNHAM, of East St. Louis, for appellant.

PRESTON K. JOHNSON, of Belleville, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

On April 24, 1930, C. F. McLaughlin engaged a taxi at the public square in Belleville, to take him to the Oakland Foundry Company, located at the junction of Florida avenue and A street. The cab was owned and driven by Ed Bien. It proceeded easterly along A street, which, west of its intersection with Florida avenue, is 30 feet wide from curb to curb, while east of the avenue its corresponding width is 24 feet. At the time in question, which was about 11 o'clock in the

forenoon of a bright, sunshiny day, there were parked
on the south side of A street, and east of Florida
avenue, several autos, which came close to the street
intersection, while on the north side one or two cars
were standing somewhat farther east.

The office of the Oakland Foundry Company is on
the north side of A street, where it corners into Florida
avenue. Bien testified that as he approached the inter-
section, he looked easterly and saw the car of appellee,
driven by Ralph Thomas, coming westerly along A
street, and 200 or 300 feet toward the far end of the
block; that he slowed his car down and started to
make a "U" turn, intending to discharge his pas-
senger at the office of the foundry company on the
northwest corner of the intersection; that to do so,
he dipped to the south in Florida avenue, and that
while so doing, his view to the east was obscured by
the cars parked on the south side of A street and east
of Florida avenue; that as soon as he swung north-
ward, he again saw the car of appellee, which was
about 75 or 100 feet east of the corner, and coming
rapidly. Bien at the time was traveling about 5 or 10
miles an hour. The car of appellee struck the cab
head-on, damaging it considerably. Bien further
stated that after the accident Thomas said he was
driving about 45 miles an hour, though the latter de-
nies making such statement.

Mr. McLaughlin, the passenger, sustained head in-
juries as a result of the collision, from which he, two
days later, died. Appellant, his employer, and appellee,
were at the time operating under the Illinois Work-
men's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et
seq.* Appellant negotiated a settlement with Susie G.
McLaughlin, widow of the decedent, in the sum of
$3,750, and became obligated to pay the medical and
hospital services in the sum of $97.85, after which
appellant, by virtue of the provisions of the Work-
men's Compensation Act, sued appellee to recover

such amounts. A verdict was returned for appellee, and judgment entered, from which appellant appeals, assigning as the sole ground for reversal that the verdict is contrary to the manifest weight of the evidence, and that the trial court should have awarded a new trial.

Thomas, the driver of appellee's car, testified that he was employed as a deliveryman for the latter, who conducted a grocery and market; that at the time in question he had completed his deliveries and started to return to the store; that he turned into A street several blocks east of Florida avenue, and proceeded westerly; that he was familiar with the locality, and knew that cars were usually parked about the intersection in question when the foundry was in operation.

He further testified that he was driving about 20 miles an hour; that he saw the cars parked east of the corner, on A street; that he did not see the taxi at any time when it was west of the intersection, and did not know of its presence or proximity until he was at the crossing and the taxi only 10 feet away, and in front of him; that it was then headed north; that he applied his brakes, but it was too late to avert the collision. He also admitted that from the time he first saw the cab he did not change his course, but drove straight into it. He did not testify that he, at any time, looked to see whether any cars were coming easterly along A street, or try to see whether any autos were traveling along Florida avenue.

Hugo Ehret stated that he saw appellee's car just previous to the accident, and that it was going 30 miles or more an hour. Wilbur Emge testified that he was driving west on A street, behind the car of appellee; that he was driving about 15 or 20 miles an hour, and that the car ahead of him made four blocks while he was traveling three.

Appellant contends that the evidence discloses that the conduct of appellee's driver, in approaching and

entering the intersection, was such as to prove him guilty of a want of ordinary care, and that his acts conclusively establish his negligence, as shown by the testimony of both plaintiff and defendant. If the proof was of such degree, then defendant has been proven guilty of negligence as a matter of law.

Whether a given course of conduct amounts in law to negligence depends upon its character and attending circumstances. If the acts or the omissions complained of so contravene the promptings of ordinary caution that reasonable minds without doubt or hesitation would agree that no careful person would be guilty of the same, then such conduct is *per se* negligence. 45 Corpus Juris, p. 633, sec. 4.

A review of the evidence reveals that A street is a straight thoroughfare, both east and west of Florida avenue; that on the day in question the weather was clear and sunshiny, the hour of the accident being about 11 o'clock in the morning; that appellee's driver had an unobstructed view of A street for several blocks west of its intersection with Florida avenue; that cars parked on the south side of A street, right up to the corner of the avenue, somewhat obscured his view to the south, and that he did not see the taxicab until he was at the street intersection, and the cab only 10 feet distant and directly in front of him.

"It is the duty of the operator of a motor vehicle approaching a crossing or intersection to keep a lookout ahead of him, and also to look for approaching vehicles on the intersecting street or highway; and although the latter duty is particularly imperative with respect to the direction from which vehicles having the right of way over him would approach, full performance of the driver's duty requires that he shall look in both directions. Where the view of the driver along intersecting streets is in any way obstructed, he must be especially vigilant with respect to a lookout on such streets, and the duty of special

vigilance also applies with respect to observation of the crossing itself where the driver's view is obstructed by other vehicles." 42 Corpus Juris, p. 962, sec. 691. *Rupp v. Keebler,* 175 Ill. App. 619; *Haggerty v. Rain,* 177 Wis. 374, 186 N. W. 1017; *Geiger v. Sanitary Farm Dairies,* 146 Minn. 235, 178 N. W. 501. And under such circumstances the failure to look is negligence *per se. Kok v. Lattin,* 261 Mich. 362, 246 N. W. 149; *Stone v. Mullen,* 257 Mass. 344, 153 N. E. 565; *Haggerty v. Rain, supra; Marinkovich v. Tierney,* 93 Mont. 72, 17 P. (2d) 93.

Aside from the legal force of the rule as stated in the foregoing authorities, the dictates of common prudence require that a motor vehicle driver, approaching a street intersection, shall be observant to determine the presence of other vehicles at or near to the intersection. All reasonable minds will agree that a driver thus approaching such an intersection, especially where it is known to him to be a busy corner, who fails to look as he approaches to ascertain whether there are other cars in proximity, is guilty of a want of ordinary care.

That appellee's driver failed to look as he came toward the crossing of A street and Florida avenue is manifest. He testifies he did not see the taxi until he was at or in the intersection, and that it was then straight ahead of him, and only 10 feet away. That he could have seen it in ample time to have stopped his car, and thus avoided the collision, had he been on the lookout for other vehicles, as the law required him, is obvious. He could not, under such circumstances, be heard to say that he did not see the cab, when, had he looked, he necessarily would have seen it. *De Bow v. Cleveland, C., C. & St. L. Ry. Co.,* 245 Ill. App. 158; *Grinestaff v. New York Cent. R. R.,* 253 Ill. App. 589. The driver of appellee's car did not testify that he looked in any direction as he approached the crossing, and the proof thoroughly establishes that he did not

do so. This failure to so look was negligence as a matter of law. *Kok v. Lattin, supra,* and *Haggerty v. Rain, supra.*

That the failure of the driver to thus keep a proper lookout, which would have enabled him to see the taxicab in time to have stopped his car or slacken its speed, and thus avoid the collision, was at least one of the proximate contributing causes of the accident.

Whether the driver of the taxi was also negligent is not controlling in the case. Mr. McLaughlin was a passenger for hire in the cab, and any negligence of the driver could not be imputed to him. *Flynn v. Chicago City Ry. Co.,* 250 Ill. 460. Moreover, even though the taxi driver was guilty of a want of care, and his negligence, combined with that of appellee's driver, was the proximate cause of the accident, the appellee would still be liable to respond in damages therefor, and could not urge the concurrent negligence of the taxi driver as a defense. *Chicago & Alton R. Co. v. Harrington,* 192 Ill. 9; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242; Thompson on Negligence, sec. 75.

We think, upon this record, it unmistakably appears that the driver of appellee's car was guilty of negligence which was an efficient cause of the accident and consequent injury. The verdict, finding appellee not guilty of negligence, was manifestly against the weight of the evidence, and the court should have sustained the motion for a new trial.

The judgment is reversed, and the cause is remanded.

*Reversed and remanded.*