Robert Withey, Appellee, v. Illinois Power Company, an Illinois Corporation, and Walter Green, Appellants.

Gen. No. 11,492.

Second District, Second Division.

September 22, 1961.

Pool & Langer, and James L. Waring, of Ottawa, for appellant.

Berry & O'Conor, of Ottawa, for appellee.

WRIGHT, J.

This is an action for damages by the plaintiff, Robert Withey, for personal injuries against defendant, Walter Green, owner of a trailer court, and defendant, Illinois Power Company, a public utility furnishing electric power to the trailer court. The case was tried before a jury in the Circuit Court of LaSalle County, Illinois, and the jury returned a verdict for the plaintiff against both defendants in the amount of $25,000, upon which the court entered judgment. Separate appeals have been taken by the defendants.

The complaint consists of two counts. Count I is directed against defendant, Illinois Power Company, and Count II is directed against defendant, Walter Green. It is alleged that the plaintiff was in the exercise of due care for his own safety at the time of the injury in question; that defendants notwithstanding their duty to exercise ordinary and reasonable care toward the person and property of the plaintiff committed one or more of the following negligent acts which was the proximate cause of plaintiff's injuries. (1) Failed to place, guard, insulate and maintain the high voltage electrical wire so that heavy current thereby carried would not be transmitted to objects approximate thereto thereby endangering the person and property of the tenants of the said trailer court. (2) Failed to raise all of said poles, apparatus and wire carrying high voltage electric current to a sufficient height above, over and beyond the television tower and antenna of the plaintiff and of others then and there resident in the said trailer court premises when the defendant then and there and for a long time prior thereto, knew and had full knowledge of the fact that the plaintiff and others would and did have in position and use television antennas and aerials. (3) Failed to inspect the wire periodically to see that the same was in a reasonable, safe condition under all of the facts and circumstances then and there present. (4) Failed to warn persons on the property at any time, and in particular the plaintiff, of the fact that the wire was carrying a current of high voltage and was dangerous. (5) Maintained the electric wire across the premises in a dangerous and defective condition. (6) Permitted the insulation on the wire to become and remain defective and ineffective to protect a person from the electrical current carried by the wire. (7) Failed to remove and string around and out of the said trailer court premises,

165

the said poles, apparatus and wire carrying high voltage electrical current running through the said premises when the defendant knew or should have known that said premises were used for residential purposes, and that the plaintiff and many others would and did have in place television antennas and aerials in the area of their respective trailers.

Both defendants contend that the trial court erred in not directing verdicts in their favor and in refusing to grant their respective motions for judgment notwithstanding the verdict for the following reasons: (a) The evidence does not sustain a finding that the defendant, Illinois Power Company, or defendant, Walter Green, were guilty of negligence in the erection or maintenance of the power line. (b) That the evidence does not sustain a finding that plaintiff was injured as a direct and proximate result of any negligence on the part of the defendants, and (c) That the evidence discloses that the plaintiff was guilty of contributory negligence as a matter of law.

The evidence discloses that in 1954 Walter Green decided to use some of his property situated in Ottawa, Illinois, as a trailer court. Preparation of the property for this use required that electric current be made available to the property. Mr. Green contacted defendant, Illinois Power Company, and requested a survey be made of his property in contemplation of installing the necessary poles and wires to furnish electric current for the trailer court. A preliminary survey was made by various engineers of the power company and a plan was agreed on between defendant Green and the power company for the installation of the system and in November, 1955, poles and wires to provide electric current to the trailer court were installed.

An existing distribution line of the power company was situated a short distance north of and parallel to the trailer court. Power was supplied to the trailer

court by attaching wires onto this existing line, and running them south over the center of the trailer court to its southerly boundary. This required the installation of two poles, one on the north boundary of the premises, and the other on the south boundary, each of which extended approximately 34 feet above the ground. On top of each pole was a metal bracket extending upwards approximately 8 inches and the wire carrying electricity was attached to insulators on the top of these brackets. This wire was No. 6 hard-drawn, bare, uninsulated copper wire and carried electricity under a pressure of 2,400 volts. On each pole was a transformer from which power could be supplied to all of the trailer court spaces under a pressure of 220 volts.

The plaintiff in July, 1956, rented a lot in defendant Green's trailer court and located thereon his trailer, and shortly thereafter he rented from defendant Green a television tower. This tower was installed by the plaintiff by placing three pipes in the ground spaced to conform to the bottom of the tower. The three pipes were placed next to the trailer on the east side near the south end. Defendant Green and two other men assisted the plaintiff in putting the tower up by lifting the tower with the antenna attached to the top of it to the plaintiff, who was standing on top of his trailer. The base of the tower was set in the three pipes on the ground and plaintiff placed the tower in the desired position. When the tower was put in place, plaintiff climbed to the top of the tower, turned the antenna toward Chicago, locked the lock-screw and then returned to the ground. The plaintiff made a bracket, fitted same around the pipe on the tower and attached it to the side of the trailer. This completed the installation. The antenna and tower remained in that position continuously from July, 1956, until the date of the occurrence which resulted in his injury on May 7, 1957.

From the ground to the top of the television tower was 29 feet 8 inches, and from the top of the tower to the top of the antenna was approximately 5 feet 11 inches, making the overall height of the tower and antenna 35 feet 7 inches. The uninsulated wire transmitting 2,400 volts of electricity was 28 feet and 8 inches above the ground and the television tower was located 8 feet 6 inches from the power line.

Subsequent to the installation of the tower and antenna and prior to the date of the plaintiff's injuries, he on two other occasions climbed about half way the distance up the tower. One time to place a junction box on the tower and run a lead wire into the trailer next to him and on another occasion to disconnect the junction box. Plaintiff testified that he had had experience in 1948 and 1949 in erecting television antennas and had set up at least eight or a dozen antennas and had also previously set up his own antenna.

On May 7, 1957, the plaintiff was preparing to move from the trailer court and so informed defendant Green and asked Green to assist him to remove the antenna from the tower. Defendant Green agreed to assist plaintiff in removing the antenna and went to the lot where the trailer was located and where the plaintiff started to climb the tower. Defendant Green suggested that the plaintiff should let him take the antenna down and that the plaintiff replied that he had had experience taking antennas down in East Gary, Hammond and East Chicago, and since he was already on the tower he would do it. Plaintiff climbed the television tower and defendant Green remained on the ground at the base of the tower to take the antenna from the plaintiff when removed. When the plaintiff reached the top of the tower he had one foot in a rung and stuck the other foot in through the pipes to hold himself in order that he would have both hands free to use in removing the antenna. Plaintiff then

unscrewed the lock-screw with a wrench, put the wrench back in his pocket and proceeded to raise the antenna out of the tower using both hands. After lifting the antenna up and out of the tower, he started to bring it down to his side for leverage and balance at which time everything blacked out and he fell. Plaintiff testified, "I couldn't see or anything, and I had sensation I was falling, nothing I could do. Then I felt the crunch. Then I must have laid there for a while, and finally I still couldn't see, I couldn't see, and couldn't move; felt like, I don't know what. I was just kind of knocked out. I wasn't unconscious, I had feeling, but I couldn't do nothing about it . . . I was laying on the roof on my back, my elbows on the roof." Plaintiff further testified that no one had said anything to him about the wire being there and that he never noticed the wire until the day he was injured. He stated that he saw the wire at the time he was at the top of the tower and that he assumed it was insulated. He further testified that he was not trying to put the antenna into the wire and even if it had been insulated, he would have tried to keep the antenna away from it. Plaintiff further testified that he did not remember feeling anything like an electric shock when he was on the tower taking the antenna down. He stated everything blacked out; that it happened real quick and that he really didn't know whether he received a shock at that time. The only other evidence on this question came from defendant Green who testified that he was not looking up toward the plaintiff at the time he fell and did not actually see him fall.

The evidence shows that there were some burn marks on plaintiff's body which his treating physician stated were probably electrical burns. These burns were on his chest and legs. There is no evidence in the record of any burns on his hands or arms.

169

The evidence in the record before us does not reveal what caused the plaintiff to fall from the top of the television tower to the roof of his trailer. Was he knocked from the tower by an electric shock produced by the antenna coming in contact with the electric wire or did he for some other reason lose his balance and fall from the tower and while falling cause the antenna to make contact with the electric wire which caused the burns?

To conclude that the plaintiff's fall from the television tower and his resulting injury was caused by an electric shock received from the electric wire is not warranted by the evidence, but so to do would be purely surmise and conjecture. Damages cannot be assessed upon mere surmise and conjecture as to what possibly happened to cause an injury. The law requires affirmative and positive proof of actionable negligence as the proximate cause of injuries suffered to warrant an assessment of damages. Deming v. Hallberg, 221 Ill App 180. The causal relation between the alleged negligence and the injury must be established by a preponderance of the evidence and with reasonable certainty. Rosenfeld v. Chicagoan, Inc., 318 Ill App 234, 47 NE2d 556; Lake Shore & M. S. R. Co. v. Petersen, 86 Ill App 375.

Without further considering the question of negligence and the question of proximate cause, we are of the opinion that the judgment of the trial court should be reversed on the issue of contributory negligence of the plaintiff. When the evidence in the record before us is considered with all reasonable inferences to be drawn therefrom and in its aspect most favorable to plaintiff, it is apparent that plaintiff has failed to prove that he was in the exercise of ordinary care for his own safety prior to and at the time of his injury. May v. Illinois Power Co., 342 Ill App 370, 96 NE2d 631.

The electric wire of the defendant, Illinois Power Company, had been in place and in operation some eight months prior to the time plaintiff moved his trailer into its location and erected the television tower and antenna thereon. The place where the television tower was erected was selected solely by the plaintiff and was a mere 8 feet and 6 inches from the electric wire. An examination of defendant's Illinois Power Company Exhibit No. 2 indicates that the tower could conveniently have been erected further north on the east side of the trailer at a place where it would have been a much further and safer distance from the electric wire. After the tower had been erected, plaintiff climbed the tower and installed the antenna and turned it to the desired position and locked it in place. The plaintiff again on two other occasions prior to the time of his injury climbed part way up the tower for the purpose of installing and disconnecting a junction box for a lead to be run into a trailer next to him. At the time of his injury, plaintiff was on the tower for the fourth time.

■ ■ Plaintiff resided in his trailer continuously from July, 1956, until the time of his injury on May 7, 1957, within a mere 8 feet six inches of the electric wire. His trailer was supplied electricity by a line carrying 220 volts from a transformer connected with the 2,400 volt line and he cannot be heard to say that he did not know that the electric line was there. A failure to see what is clearly visible is not such conduct as is compatible with due caution for one's own safety. Donnelly v. Real Estate Management Corp., 342 Ill App 453, 96 NE2d 820. Where danger is obvious to a person of ordinary intelligence, the law will charge him with knowledge of it and the law does not countenance the anomaly of one professing to look and not seeing that which is clearly visible. Sumner v. Griswold, 338 Ill App 190, 86

171

NE2d 844; Grubb v. Illinois Terminal Co., 366 Ill 330, 8 NE2d 934.

■ ■ It has long been recognized that the danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience. Its use as a motive power has become so general and wide spread as to acquaint all competent persons with the fact that any line carrying electricity is dangerous. Watson v. Virginia Electric and Power Co., 199 Va 570, 100 SE2d 774. A high tension transmission wire transports an invisible, silent instrument of death and is one of the most dangerous things known to man, and one cannot act except at his own peril in a place of great danger and remain oblivious of a known obvious and serious hazard. A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the exercise of reasonable and ordinary care. Jamerson v. Witt, 332 P2d 1054 (Sup Ct Oregon, 1958); Carr v. Kentucky Utilities Co., 301 SW2d 894 (Ct of Appeals of Ky, 1957). Ordinary care in a particular case is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. Austin v. Public Service Co. of Northern Illinois, 299 Ill 112, 132 NE 458.

■ Whether or not the plaintiff had a right to erect the television tower where he did and whether or not be had a right to climb the tower for the purpose of removing the antenna does not determine the question as to whether he was exercising due care and caution for his own safety. The mere fact that one has a right to commit an act does not justify exposing himself to a known hazard in the commission of the act. As was aptly stated in Austin v. Public Service Co. of Northern Illinois, supra, "a person has a right to attempt to beat a fast passenger train across a public railroad crossing, but it has been often and

172

sadly demonstrated that it is not the prudent thing to do."

In view of the record in this case, we are forced to the conclusion that plaintiff failed to prove that he was in the exercise of ordinary care for his own safety prior to and at the time of the injury in question and that his injury was proximately caused by the alleged negligence of the defendants. Such conclusion is so plain and clear that all reasonable men must arrive thereat from a dispassionate consideration of the evidence in this case. The evidence not only failed to show the exercise of ordinary care on the part of the plaintiff prior to and at the time of the injury in question, but on the contrary, showed a complete want of care. We, therefore, conclude that the trial court erred in denying defendants' motions for judgment notwithstanding the verdict.

Reversed and remanded with direction to set aside the verdict and judgment thereon and enter judgment for defendants, Illinois Power Company and Walter Green.

Reversed and remanded with directions.

SPIVEY, P. J. and CROW, J., concur.