COLLEEN CLAUSEN, Plaintiff-Appellant, *v.* ED FANNING CHEVROLET, INCORPORATED *et al.*, Defendants-Appellees.

(No. 72-95; )

Third District—December 28, 1972.

Jerome Mirza, of Bloomington, (Robert B. Gomien, of counsel,) for appellant.

Sidney Z. Karasik, of Chicago, (Masters, Ryan, Brumund & Belom, of counsel,) for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from the entry of judgment for defendant pursuant to a motion for summary judgment in the circuit court of Grundy County.

Colleen Clausen, plaintiff, instituted an action as against Ed Fanning Chevrolet, Inc., and its employee, Kenneth Hoebble, to recover damages for personal injuries sustained in a highway collision between the automobile driven by her and one driven by Edward Conley. Prior to the accident, the vehicle being driven by plaintiff had received certain repairs to the body of the vehicle at the garage of Ed Fanning Chevrolet, Inc., and, in substance, it was the theory of plaintiff's complaint that defendants had disconnected the left front headlight in the course of their repair work. It was asserted that defendants had negligently failed to connect such headlight or to warn that it was not operating, and that such negligence was a proximate cause of the collision with the Conley vehicle. As indicated, the trial court granted defendant's motion for summary judgment, and held as a matter of law that the inoperative left headlight was not a proximate cause of the accident.

Plaintiff's automobile was in the Fanning garage for body repairs from October 27 through October 30, 1967. For the purposes of this opinion, it will suffice to observe that it appears from the deposition and affidavits filed in connection with the motion for summary judgment, that plaintiff, on trial, could have established a *prima facie* case from which reasonable men could conclude that defendants had disconnected the headlight and had negligently failed to reconnect the headlight as alleged in the complaint.

The record shows that it was about 4:00 P.M. on October 30, 1967,

when plaintiff and her husband received the automobile driven by plaintiff from the garage in Aurora, Illinois. They immediately set out to drive to Dwight, Illinois, to return the automobile of a relative which had been borrowed while their own automobile was being repaired. Plaintiff drove the Clausen vehicle and her husband followed in the borrowed automobile. They visited in Dwight until about 6:30 P.M. and then started their return trip to Aurora. The plaintiff, Colleen Clausen, was driving at the time. The first part of their trip was over Illinois Route 47, a two-lane concrete highway running between Dwight and Morris, Illinois. Traffic was heavy and it was a misty, rainy evening with poor visibility. Neither plaintiff nor her husband were aware that the left front headlight was not operating.

At about 7:00 P.M., when it became completely dark, plaintiff passed an automobile driven by Rick Feldman and thereafter both the Clausen vehicle and the Feldman vehicle passed a semi-tractor trailer truck and then returned to the right or northbound lane behind a second semi-tractor trailer truck being driven by Cornelius Hoevenaar. Both Hoevenaar and Feldman stated in affidavits that the left headlight on plaintiff's automobile was not operating. Plaintiff drove behind the second truck at a speed of about 45 miles per hour and at a distance of approximately two car lengths or 36 feet. It also appears that the rear dual wheels of the truck were kicking up a heavy mist or spray. According to plaintiff's deposition which was corroborated by Feldman's affidavit and that of a passenger in his car, plaintiff edged over into the left lane, or "peeked out", to see if it was safe to pass the truck but returned to the right lane behind the truck when she saw traffic coming from the opposite direction. When the traffic had passed, she again "peeked out" to see if it was safe to pass and in so doing edged into the left lane a distance of one to two feet. While the automobile was in this position (for a time plaintiff estimated to be two seconds) she collided with the Conley car coming from the opposite direction. The point of impact was at the left front headlight of each vehicle. In plaintiff's deposition she also stated that she had not seen the lights of the Conley vehicle until just before impact, when it was even with the truck.

■■ In the Conley deposition, Conley stated that the night was dark and rainy; that visibility was "practically nil"; that he was driving his car at about 45 to 50 miles per hour entirely within the left or southbound lane of traffic (in his proper lane) and that the impact occurred about two feet to the left of the center line of the road. He also stated that he first saw plaintiff's vehicle when he was 30 to 40 feet from it, at a time when he was about even with the truck, and that he noted plaintiff's car did not have a left front headlight. When he was asked if he

could state the time interval between the first sighting of plaintiff's automobile and the collision, he replied: "Seconds, but I don't know." He later stated that it would be "something like that" when asked if he concurred in plaintiff's estimate of two seconds. Conley was also asked if he had an opportunity to avoid the collision and responded: "Well, I think at the last second when I saw the car, I tried to head for the ditch, but I don't think I got over very far before the impact." In describing the topography of the road at the scene of the crash he said that there was a "slight incline" but not much, and that he was on a "slight upgrade" as he was going south. In plaintiff's deposition she stated that there was a dip in the road and that she could see in "a downward-forward direction if the other car had been in the right place." In an affidavit of Conley filed in opposition to defendant's motion, Conley stated that when he first became aware of plaintiff's automobile prior to impact, the first thing he saw was a right front headlight which was shining and illuminating; that the left front headlight was not operating and that if the left front headlight had been operating he would have seen the vehicle sooner than he did see it and would have had time to veer his car and that he would have been able to avoid the collision. The latter portions of the Conley affidavit contained certain conclusions to which Conley could not competently have testified, and, of course, such conclusions are and should be disregarded in considering the motion for summary judgment. *Kamholtz v. Stepp*, 31 Ill.App.2d 357; *Kaminski v. Missionary Sisters of the Sacred Heart*, 62 Ill.App.2d 216. See Supreme Court Rule 191 (a)—Ill. Rev. Stat. 1971, ch. 110A, par. 191 (a).

The order which granted summary judgment found it to be "undisputed" that the time interval between the time plaintiff edged into the left lane and the collision was a matter of approximately two seconds, and, on this basis, held as a matter of law that the inoperative left headlight was not the proximate cause of the accident. Apparently, the trial court concluded that because of the time element, the accident could not have been averted even if the left headlight on plaintiff's car had been operating and that all reasonable men would so agree.

■■■ It is well established that the purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact (*State Farm Mutual Auto Insurance Co. v. Short*, 125 Ill.App.2d 97; *Harp v. Gulf, Mobile and Ohio R.R. Co.*, 66 Ill.App.2d 33), and it is axiomatic that the right to summary judgment must be free from doubt. (*Silberstein v. Peoria Town & Country Bowl, Inc.*, 120 Ill.App.2d 290; *Chrysler Credit Corp. v. M.C.R. Leasing Co.*, 118 Ill.App.2d 111.) Section 57 of the Civil Practice Act provides that a summary judgment should be entered if the pleadings, depositions and affidavits on file, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. (Ill. Rev. Stat. 1971, ch. 110, par. 57.) It has also been held that the pleadings, depositions, and affidavits must be construed most strictly against the moving party and most liberally in favor of the opponent. (*Ruby v. Wayman,* 99 Ill.App.2d 146.) In further construing Section 57 it was stated by the court in *Peirce v. Conant,* 47 Ill.App.2d 294, at page 300:

> "In determining if there is a genuine issue, inferences may be drawn from the facts which are not in dispute. If fair minded persons could draw different inferences from the facts, a triable issue exists. Tezak v. Cooper, 24 Ill.App.2d 356, 164 N.E.2d 493. It is only when the undisputed facts are susceptible of but a single inference does the issue become one of law. Halloran v. Belt Ry. Co. of Chicago, 25 Ill.App.2d 114, 166 N.E.2d 98."

See also: *Lumbermens Mutual Casualty Co. v. Poths,* 104 Ill.App.2d 80.

In view of the fact that the judgment of the trial court turned on proximate cause in the instant case, we believe that it is pertinent to observe the principles which apply in the determination of proximate cause. As stated by the court in *Arden v. Chicago Transit Authority,* 89 Ill.App.2d 214, at 222:

> "The question of proximate cause is generally one of fact for the jury and is to be determined from all of the circumstances attendant upon the alleged negligent act. Merlo v. Public Service Co., 381 Ill. 300, 318, 45 N.E.2d 665. Proximate cause only becomes a question of law when the facts are undisputed, and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. Philabaum v. Lake Erie & Western R.R. Co., 315 Ill. 131, 145 N.E. 806."

See also: *Ney v. Yellow Cab Co.,* 2 Ill.2d 74.

■■ If we analyze the record in the cause before us in relation to the foregoing principles and decisions to which we have referred, it is apparent to us that the trial court should not have granted summary judgment in favor of the defendants. It is common knowledge that drivers on our modern highways must, and do, make split-second decisions and operate their vehicles accordingly. Regardless of the record which was made as to "two-second interval" relied upon by the trial court, it is our conclusion that fair-minded men might agree that the nonoperation of plaintiff's left headlight was a proximate or contributing cause to the collision. We feel that this is notably so in view of the showing that Conley did not become aware of plaintiff's car until he saw the right headlight. The facts in the record show that plaintiff did not

pull sharply into the left lane of traffic, but edged over, and it necessarily follows that had the left headlight been illuminated, Conley would have become aware of plaintiff's automobile sooner than he did. Since it appears that plaintiff's vehicle encroached into the left lane only a distance of one to two feet, we believe that the question of whether the additional time of observation which would have been afforded by an operating left headlight which could have given Conley the opportunity to avoid the collision, was an issue to be determined by a jury.

██ While we do not find from the record that the question was pursued or passed upon below, defendants contend that summary judgment was proper because plaintiff was guilty of contributory negligence as a matter of law. Defendants' argument in this regard is based upon the premise that plaintiff was attempting to pass the truck, a premise which finds no support in the depositions or affidavits. In addition thereto, Count III of plaintiff's complaint is based upon strict liability and as to such contention, contributory negligence, as such, is not an issue. (*Williams v. Brown Mfg. Co.*, 45 Ill.2d 418.) As to the remaining counts, the question of contributory negligence ordinarily and preeminently is one of fact, and it can become a question of law only when from the undisputed facts, all reasonable minds, in the exercise of fair and earnest judgment would be compelled to reach the conclusion that there was contributory negligence. (*Workman v. Goldford*, 86 Ill.App.2d 403.) In the instant case, fair-minded men could draw different conclusions as to whether plaintiff was contributorily negligent, in acting in the manner, at the time and place and under the conditions which she did and we accordingly conclude that summary judgment should not be sustained on such ground. The issue is one for the jury.

The judgment of the circuit court of Grundy County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STOUDER, P. J., and SCOTT, J., concur.