RICHARD L. STAMBAUGH, Plaintiff-Appellant, *v.* CENTRAL ILLINOIS LIGHT COMPANY *et al.*, Defendants-Appellees.

Third District   No. 75-229

Opinion filed October 14, 1976.

BARRY, J., dissenting.

William R. Kelly, of Peoria, for appellant.

Kavanagh, Scully, Sudow, White & Frederick, and O'Hern, O'Hern & Wombacher, both of Peoria (Eugene White, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This is an action for damages by the plaintiff against five defendants for personal injuries sustained while plaintiff was visiting a friend who resided at a mobile home park. Two defendants, Central Illinois Light Company and 2528 Farmington Road, Inc., were dismissed on plaintiff's motion. Summary judgment was granted in favor of the three remaining defendants who were the operators of the mobile home park where plaintiff was injured, and plaintiff appeals.

The portion of plaintiff's second amended complaint relevant to this

appeal alleged that defendants were the operators and lessors of a mobile home park and had leased a lot to William Hetzel. On June 29, 1972, plaintiff went to Hetzel's mobile home for the purpose of assisting Hetzel in relocating a CB radio antenna atop a tower. After plaintiff had climbed part way up to the tower, the upper portion of the antenna came in close proximity to an uninsulated electric power line carrying 13,000 volts which ran across the rear of Hetzel's lot. The current arced from the power line to the antenna and knocked plaintiff to the ground, causing serious injury. Plaintiff alleged that defendants were negligent in allowing the trailer to be placed near the power lines, failing to keep the property reasonably safe and failing to warn plaintiff of the danger. Plaintiff also alleged that defendants had notice of the dangerous condition because in 1961, a resident of the park was killed when electricity arced from a power line to a television antenna the resident was erecting.

Defendant DeLuxe Mobile Home Park, Inc., in its answer, alleged as new matter that the power lines and transformer were plainly visible. This new matter was not denied by plaintiff. Subsequently DeLuxe submitted the affidavit of Edward Butler, the custodian for the mobile home park, and 13 photographs of the area of Hetzel's lot showing the tower, antenna, power lines and transformer. In the affidavit, Butler stated that the tower on top of which the antenna was to be placed is 35 feet high, that the photographs correctly portray the area adjacent to Hetzel's mobile home, that, as shown by the photographs, there are no obstructions to the view of the power lines and transformer, and that the injury occurred between 1:45 and 2 p.m. on a clear, bright day with excellent visibility.

Also presented to the trial court were excerpts from plaintiff's deposition, in which plaintiff stated that he had been at Hetzel's mobile home on eight or nine previous occasions and had helped Hetzel build his front porch, but had never noticed the power lines or transformer. On the date he was injured, he climbed up the tower with his back to the rear of the lot so that the wires were behind him, and Hetzel handed him the antenna, which plaintiff estimated to be eight feet in width. Plaintiff stated that no one warned him about the wires, and he did not see the wires or transformer.

After DeLuxe's motion for summary judgment was granted, the other two defendants were likewise granted summary judgment.

■■ The issue before us is whether the pleadings, affidavits and depositions show that there is no genuine issue as to a material fact and that defendant is entitled to judgment as a matter of law. The right of the moving party to summary judgment must be free from doubt and even where there is no dispute in the evidence, if different conclusions may reasonably be drawn from the evidence, it is the province of the jury to

draw the conclusion which to them seems most reasonable. *Silberstein v. Peoria Town & Country Bowl, Inc.* (3d Dist. 1970), 120 Ill. App. 2d 290, 257 N.E.2d 12.

Here the undisputed facts show that plaintiff, who had been to Hetzel's on eight or nine previous occasions, climbed a 35-foot tower and received an electrical shock when an antenna which plaintiff was raising came into close proximity to an uninsulated electric wire. Plaintiff was not aware of the power lines or transformer, and did not see the wires on the date of his injury. The undisputed facts also show that these wires were not obstructed and were plainly visible.

We first note that defendants to this appeal are owners and lessors of the mobile home park and plaintiff was a guest of Hetzel. In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, plaintiff, who had contracted to erect an antenna on defendant's land was electrocuted when the antenna came in close proximity to uninsulated power lines and brought suit against the utility company and defendant landowner. In that portion of the opinion relevant here, our supreme court discussed the duty of a possessor of land to business invitees and held that plaintiff failed to state a cause of action as against defendant landowner. The court noted that defendant would not have discovered the danger of electrical arcing from power lines which were neither on its property nor under its control, and plaintiff, as a business invitee, would be deemed to have knowledge of the dangers of erecting an antenna near power lines. The court also stated:

> "Furthermore, we note that Count VI fails to allege that the wires in question were either hidden or concealed. As it is common knowledge that electricity is dangerous, so it is also common knowledge that any line or wire carrying electricity is dangerous. The potential risk of installing metal equipment in close proximity to power lines is apparent."

■■ The Restatement (Second) of Torts, section 343, correctly states the settled law regarding the liability of possessors of land to invitees. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 557, 328 N.E.2d 538.) Any duty which defendants have to plaintiff extends, at most, to latent or concealed conditions or conditions which defendants know create an unreasonable risk of harm and should realize that plaintiff will not discover or appreciate. Liability is based, in part, on the superior knowledge which owners or possessors of land have as to dangerous conditions on the land. Here, the power lines were not under defendants' control, but were on an easement granted to the utility company. More significantly, plaintiff has neither alleged nor adduced facts which indicate that these wires were hidden or concealed, nor has he refuted defendants' evidence which shows that the wires were not obstructed

from view and were plainly visible. An owner of land is not an insurer against accidents occurring on the premises and liability must be predicated upon negligence on the part of the owner. *Beccue v. Rockford Park District* (2d Dist. 1968), 94 Ill. App. 2d 179, 236 N.E.2d 105.

We do not believe that plaintiff has shown any negligence on the part of these defendants where the injury was caused from electrical wires which were plainly visible and which constituted a commonly known danger. Assuming however, that *Genaust* is distinguishable and plaintiff at least stated a cause of action, this does not excuse plaintiff from looking when he should look and from seeing that which is within the range of vision. *Clark v. Quincy Housing Authority* (4th Dist. 1967), 86 Ill. App. 2d 458, 229 N.E.2d 780.

■■ While contributory negligence is preeminently a question of fact, it can become a question of law when from the undisputed facts, all reasonable minds in the exercise of fair and earnest judgment would be compelled to reach the conclusion that plaintiff failed to exercise that degree of due care for his safety required of an ordinary prudent person. *Bitner v. Lester B. Knight & Associates, Inc.* (3d Dist. 1974), 16 Ill. App. 3d 857, 307 N.E.2d 136; *Clausen v. Ed Fanning Chevrolet, Inc.* (3d Dist. 1972), 8 Ill. App. 3d 1053, 291 N.E.2d 202.

A similar situation was involved in *Withey v. Illinois Power Co.* (2d Dist. 1961), 32 Ill. App. 2d 163, 177 N.E.2d 254. There the plaintiff, who had resided at a mobile home park for 10 months, was injured while attempting to move his television antenna and brought suit against the power company and owner of the park, alleging that the injury was caused by the antenna coming in contact with uninsulated power lines. In holding that plaintiff was contributorily negligent as a matter of law, the court stated:

> "[Plaintiff] cannot be heard to say that he did not know that the electric wire was there. A failure to see what is clearly visible is not such conduct as is compatible with due caution for one's safety."

The court also noted that the danger of electrical energy is a matter of common knowledge to persons of ordinary intelligence and experience.

■■ We believe that plaintiff, who climbed a tower and raised an antenna, without looking for, or seeing power lines, which were clearly visible and which posed an obvious danger, failed to show that he exercised due care. Plaintiff is bound to exercise reasonable and ordinary care to foresee danger and avoid injury, and a person who carelessly walks into danger that the observance of ordinary care would have enabled him to avoid is contributorily negligent. (*Coleman v. Illinois Central R.R. Co.* (1974), 59 Ill. 2d 13, 319 N.E.2d 228; *Briske v. Village of Burnham* (1942), 379 Ill. 193, 200, 39 N.E.2d 976; *Crowe Name Plate &*

*Mfg. Co. v. Dammerich* (4th Dist. 1935), 279 Ill. App. 103.) Here, plaintiff had been to Hetzel's mobile home several times previously and, at the time of the injury, was on a 35-foot tower erecting an antenna. We believe that plaintiff must be charged with seeing that which was clearly visible and which presented a commonly known danger. *Withey v. Illinois Power Co.* (2d Dist. 1961), 32 Ill. App. 2d 163, 177 N.E.2d 254.

The cases cited by plaintiff are clearly distinguishable. In those cases the evidence showed plaintiff to be aware of the danger, and the issue was whether plaintiff had nevertheless exercised due care. Compare *Stilfield v. Iowa-Illinois Gas & Electric Co.* (2d Dist. 1960), 25 Ill. App. 2d 478, 167 N.E.2d 295, with *Witzig v. Illinois Power Co.* (4th Dist. 1969), 114 Ill. App. 2d 139, 251 N.E.2d 902.

The dissenting opinion filed herewith suggests "the wires are merely carriers that give only slight evidence in respect to the dangerous character of their cargo," which seems to ignore the fact that it has long been recognized that the danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience. In addition, the dissenting opinion proceeds on its theory of "arcing," even though it admits there was no evidence of how close plaintiff came to the wire. The reliance on cases from foreign jurisdictions is, of course, understandable, since Illinois authorities are to the contrary.

■■ The plaintiff was not excused from looking where he should have looked and seeing what was within his range of vision. By his own admission, he climbed up the tower with his back to the wires. The electrical wires were an obvious hazard whch could have been observed by anyone who was looking and was careful. Under the facts and circumstances of the instant case, we do not think the trial court erred in finding plaintiff contributorily negligent as a matter of law. In the absence of a question of material fact, summary judgment is proper. *Hessler v. Cole* (1st Dist. 1972), 7 Ill. App. 3d 902, 289 N.E.2d 204.

The trial court properly entered a summary judgment in favor of defendant. The judgment of the Circuit Court of Peoria County will be affirmed.

Judgment affirmed.

STOUDER, P. J., concurs.

Mr. JUSTICE BARRY, dissenting:

The complaint alleges that plaintiff suffered serious injuries which are claimed to have been caused (proximately, as the law requires), not by any physical contact with electrical wires which are admitted to have

been plainly visible, but, according to the complaint, by the dangerous and secret proclivities of the high voltage transmitted by these carriers to escape through space to the antenna plaintiff held in his hand. It is alleged that defendants had actual knowledge of the latent and dangerous potentiality of the energy transmitted by these uninsulated wires to escape by arcing, and that defendants' knowledge derived from their awareness of a prior similar occurrence, unknown to plaintiff, wherein one Donald Boles was electrocuted when electricity from these same wires jumped through space to a television antenna he was affixing to his mobile home located in this very same residential park. Finally it is charged that defendants were negligent in failing to warn plaintiff of this latent peril of which they had knowledge and of which he was unaware, and that he was at all times in the exercise of due care for his own safety.

Considering these pleadings, and the denials contained in defendants' answer, I confess dismay at the conclusion of the majority that plaintiff's testimony, given in a discovery deposition, that he did not look or see the visible overhead wires, when considered in its aspects most favorable to plaintiff, precludes all reasonable inference that he acted in due care. This rule that a plaintiff is barred from recovery by his failure to look and see has heretofore always been limited to situations where the causative peril is alleged or shown to be a *patent* one which would have been plainly visible and appreciated by any reasonable and sighted man had he simply looked. But the plainly visible wires are not the causative peril by which plaintiff is alleged to have been menaced here. The wires were merely the silent carriers of an invisible force the lethal capacities of which are alleged to have been unknown to plaintiff but known to defendants.

At 57 Am. Jur. 2d *Negligence* §342 (1971), the rule is given that "[t]he duty to look and listen is not an absolute one; it may be qualified by attendant circumstances." Thus, in *Locke v. Red River Lumber Co.*, 65 Cal. App. 2d 322, 150 P.2d 506 (1944), for example, plaintiff-customer in defendant's well-lighted store sustained injury when she tripped on a plainly visible defect in the concrete floor of an aisle. A judgment in plaintiff's favor was affirmed against defendant's contention that the proof showed her contributorily negligent as a matter of law in failing to look and see the plainly visible defect. Relying on American Jurisprudence, the court said even of patent and observable dangers that while one is ordinarily required in the exercise of reasonable prudence to use his sight and hearing with due diligence for his safety, the mere failure to observe a visible peril does not necessarily constitute contributory negligence *since such failure may be reasonably accounted for by other proof as to circumstances*, and that *it is a question of fact* as to whether in light of all the evidence, the failure to look and apprehend is reasonably accounted for.

At 57 Am. Jur. 2d *Negligence* §342 (1971), it is explained further that it is not contributory negligence to fail to look out for a danger, where it is shown that looking and listening would not have given notice or comprehension of the existing peril. And at section 333 of the same volume and topic, it is stated that "[o]ne cannot be charged with contributory negligence *as a matter of law* unless the danger was so glaring and obvious as to threaten immediate danger." (Emphasis added.)

Reliance by the majority on the *Genaust* cause is misplaced. The only discussion in that case which is relevant to the facts here is the discussion at 62 Ill. 2d 456, 343 N.E.2d 472, in respect to the negligence claim *against the landowner*. And that discussion is authority for a conclusion exactly the opposite of that reached by the majority here. In that case plaintiff was an *electrical contractor* who came upon defendant's property to install an antenna. Without coming into contact with overhanging power lines, plaintiff was injured by electrical energy which arced to the antenna. The court said *of the defendant-landowner who looked and knew of the wires, that even seeing it, he could not be reasonably held to have discovered or foreseen the latent danger that electrical energy could arc* from the transmission lines, *and therefore, had no duty to warn* of a danger not reasonably foreseeable to him. But the plaintiff in that case, in contrast to the facts alleged here, was an electrician held chargeable with knowledge of the potential risk. Viewing the undisputed proof in the case at bar, in its aspects most favorable to plaintiff, it might be reasonably inferred of him as he alleges by his averments of due care, and as it was said of defendant-landowner in *Genaust*, that even observance of the wires would not reasonably have disclosed to him the peril to be avoided. And in contrast to *Genaust* where plaintiff was an electrical contractor chargeable with knowledge of the peril, plaintiff's complaint here alleges that *defendants* had actual knowledge of the secret and lethal risk because of a prior electrocution on their property under similar facts. The risk reasonably to be foreseen by them defined the duty to be obeyed here. See *Ray v. Cock Robin, Inc.*, 10 Ill. App. 3d 276, 293 N.E.2d 483.

Cases from other jurisdictions reinforce my construction of the law applicable here. In *Elliott v. Black River Electric Cooperative*, 233 S.C. 233, 104 S.E.2d 357 (1958), plaintiff's decedent was a carpenter and farmer who was electrocuted when electrical energy escaped from an overhead high voltage wire and arced to a metal lift rod decedent was holding while making repairs to a pump. The proof showed that decedent had no special knowledge of electricity and that no physical contact had been made with the wire. He had not been warned or informed as to the high voltage or its proclivities. Several engineers testified as to the capacity of electricity at different voltages, to arc different distances, depending upon atmospheric conditions. The claim was made there that

the proof showed decedent to have been contributorily negligent as a matter of law. That argument was rejected by the trial court and the judgment for plaintiff was affirmed on appeal. The record shows, the appeals court observed, that arcing is caused not solely by the voltage, but by that and a combination of other circumstances which would spell foreseeable danger *to an electrician but nothing to an ordinary layman* unskilled in such matters. This holding is entirely compatible with *Genaust*. The wires are merely carriers that give only slight evidence in respect to the dangerous character of their cargo.

The *Elliott* case also referred to an earlier decision in *Hill v. Carolina Power & Light Co.*, 204 S.C. 83, 28 S.E.2d 545 (1943), which contains observations relevant to this discussion. In *Hill*, plaintiff was a farmer-carpenter with no knowledge of the vagaries of electricity. He was working on the roof of a warehouse near the ridge sawing wood sheeting. The saw was in his left hand and a piece of tin roofing in his right. The roof was wet, and he also was wet with perspiration, it being a wet, warm, sultry, drizzly day. Suddenly, the current of 11000 volts from defendant's overhead wire arced to plaintiff's left shoulderblade, passed through his body causing shocks, to a minor degree, to five or six other workmen on the roof. One of the fellow workmen testified that he saw a ball of fire leave the high tension carrier and jump a distance of two feet to plaintiff's back. There was other testimony that plaintiff had been as close as six inches away from the wire. All the workmen had seen the wire but none was aware of its voltage or that current might escape without actual contact. *Yet even though they all had looked and had seen the wire*, plaintiff there was not held guilty of contributory negligence in coming in close proximity. There was conflicting proof as to how far current may arc from a wire carrying 11000 volts. So frequently, said the court, do unlooked for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear so clear and irrefutable that no room is left for the entertainment by reasonable minds of any other.

In the case at bar, we have no evidence of atmospheric conditions, no evidence of how close plaintiff came to the wire, no evidence as to how far the voltage arced, and, according to defendant's answer, a disputed factual issue even as to whether any physical contact occurred. It is admitted simply that plaintiff did not look or see the wire, and construing that incident most favorably to plaintiff, the majority, like the unpredictable propensities of electrical energy, arc a considerable gulf to the conclusion that no material factual dispute exists here, and that plaintiff is barred as a matter of law.

There are other cases with facts even more parallel to those alleged here where the issues of negligence were held to be questions of fact. In *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 339 P.2d 702

(1959), plaintiff was injured while on the property of a friend whom, with another, he was helping to turn a television antenna. They had casually observed the presence of defendant's overhead electrical wire but plaintiff said it did not particularly attract their attention. The secret and unknown fact was that the wire carried 33000 volts of electricity which escaped to the antenna, electrocuting the two friends and injuring plaintiff. The trial court withdrew the case from the jury at the close of proofs on defendant power company's motion that the injuries were caused by plaintiff's contributory negligence. The Kansas Supreme Court reversed and remanded holding that plaintiff was not, as a matter of law, guilty of contributory negligence, and that the issue should be submitted to a jury. The ordinary person, said the court, has no means of knowing whether any particular wire is carrying a lethal current or is harmless. "Mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery * * *" *as a matter of law*. 184 Kan. 691, 702, 339 P.2d 702, 711.

In *Hoppe v. City of Winona*, 113 Minn. 252, 129 N.W. 577 (1911), plaintiff's intestate was an employee of defendant painting-contractor employed by defendant-city to paint its Mississippi River Bridge crossing to Wisconsin. The city had allowed defendant power company to string electrical wires across the bridge and the proof showed these wires were used to carry or transmit from 25000 to 45000 volts of electricity. While painting the bridge, plaintiff's intestate, without any physical contact with the wires, was electrocuted by arcing voltage. Defendant-city and defendant-power company claimed that decedent was contributorily negligent as a matter of law, and raised this issue on appeal from adverse judgments. In affirming the judgments, the Minnesota Supreme Court observed (113 Minn. 252, 256, 262, 129 N.W. 577, 578, 581) that this generally "unknown, powerful, and destructive" propensity of electricity is well known to electricians and though present "was concealed and beyond the knowledge of the contractor or his servants," and that the duty to make it known was upon the city that owned the bridge upon which decedent was standing, and the power company whose wires were suspended overhead. It was held that the issues were correctly submitted to the jury.

For cases supporting the thesis that recovery would not necessarily be barred as a matter of law even if plaintiff, after looking and seeing the wire, had touched it intentionally or accidentally, see *Annot.*, 34 A.L.R.2d 98 (1954) and cases cited therein.

I respectfully suggest the cases cited by the majority are distinguishable and not supportive of the trial court's granting of the summary judgment.

I would reverse and remand the cause for further proceedings.