FRANK J. HABERMAN, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

Second District   No. 79-191

Opinion filed May 20, 1980.—Rehearing denied June 30, 1980.

A. E. Mannina, of Marco & Mannina, of Downers Grove, for appellant.

Peter A. Zamis, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Frank J. Haberman sued Commonwealth Edison Company (Edison) to recover for injuries received when he fell from an electrical service pole. In his original complaint the plaintiff charged defendant with negligence. At the close of plaintiff's case in chief in a jury trial he filed an amended motion to add a count for general negligence, based on *res ipsa loquitur*. The judge reserved his ruling until the close of proofs. At the close of the evidence the plaintiff tendered a motion for directed verdict

based on the general allegations of negligence, which the judge denied. The jury in answer to a special interrogatory found Haberman guilty of contributory negligence and returned a general verdict in favor of Edison. A motion for judgment notwithstanding the verdict was denied. Haberman appeals, contending that his motion for a directed verdict and for judgment *n.o.v.* were improperly denied and that it was error to permit the issues of liability and contributory negligence to go to the jury.

Plaintiff was employed as an electrician for Edward Lewis, an electrical contractor, whose firm had contracted to work on a particular project for the Butler International Golf Course, which was to host the Western Open golf tournament. The work was the installation of a three-phase electrical service to be installed on a service pole located on private property across the street from the golf course. (Hereinafter referred to as the "service pole".) A larger pole with a transformer on it was owned by Edison and was located approximately 70 feet from the Butler property. There were two lines connecting the main pole to the service pole. The uppermost line provided a single-phase service, which existed and was operational at the time the project began. The lower line was installed by Edison approximately 30 days prior to the accident. In order to provide the three-phase system on the service pole, the second wire was attached to it by means of a device termed a "spool deadend cleavice." A wire was entered through what was termed the deadend bale and wrapped around an insulated spool. The cleavice includes a bolt by which it is attached to the pole, extending through it, and tightened with a nut, leaving part of the bolt extending. Edison also installed a second transformer on its main pole, since this was required to operate the three-phase system.

On June 20, 1974, it was plaintiff's duty to run a service from the bottom of the pole to the area near the cleavice. He was to install a meter box and connect a riser to the service pole. A riser is a 2-inch pipe with four wires inside which are pushed through the pipe while it is on the ground. The riser is then lifted and fastened to the pole with brackets or clamps. At the top of the riser is a device called a service head, which has four holes in it through which the wires are run.

It was not plaintiff's job to connect the wires to Edison's line. He was merely to run the lines near the cleavice and to leave the four wires hanging out unconnected until either the village inspector or the county inspector checked the work.

Just prior to the accident, plaintiff was on a ladder approximately 15-20 feet off the ground. His employer, Lewis, was on the ground. Plaintiff was attaching the last bracket on the service head near the top of the pole. As he stepped up the ladder in an attempt to get more leverage to turn the screws which fastened the brackets to the pole, his hand came in

contact with the protruding end of the fork bolt, he received an electric shock, and fell from the ladder.

Plaintiff's employer, Lewis, testified that when he first got to the scene of the accident he considered it unusual that there were two services on the pole, as in his experience on a private property pole one service usually took care of everything. He admitted, however, that he had never worked on making a one-phase system into a three-phase system. He said that when he returned to the job site the next day and examined the pole he tested the fork bolt and the riser and found that the fork bolt was energized. After testing, he inspected the cleavice and discovered that the deadend bale had slipped off the ceramic insulator spool, thereby energizing the cleavice and sending electricity through the bolt attachment.

The only serious dispute in the evidence relates to the issue of contributory negligence. Plaintiff admitted that he did not check the cleavice before he went up the ladder. He also did not look to see whether the deadend bale was around the insulator although he was about 10 inches away at the time of the accident. He said that he had no reason to do so based upon his experience, which was that he had never before found a fork bolt on a pole to be electrified. Plaintiff testified that he was able to observe the various lines running from the Edison pole to the service pole and was able to see the three-phase wire. He stated that in his prior experience he had never seen a situation like this one since Edison usually came in afterwards to string the wires.

Plaintiff testified that the work he was doing did not require rubber gloves because everything he was working on was dead; he similarly stated that he never wears rubber gloves when installing a riser and is not intending to hook up any wires. He admitted, however, that he did not wear rubber gloves, although he had some available and further admitted that rubber gloves would have insulated him from shock. His employer also testified that there was no discussion between him and plaintiff about wearing protective rubber gloves and that generally rubber gloves were not worn when a riser is put up and no connections were to be made.

Harris Langeler, crew leader for Edison, testified under section 60 of the Civil Practice Act that when they attached the cleavice to the pole the deadend bale was wrapped around the insulator. He further testified that he energized the second line after it was hooked up from the Edison pole to the service pole. He stated that after the accident he saw that the bale was then off the insulator spool and touching the metal fork; but at the time when the job was done, he had looked up and found that everything looked proper before he instructed another employee to energize the line. He stated that there is no rule or regulation which prohibits energizing the

three-phase line prior to the electricians coming in and installing the service head; rather, he said it is common practice to leave the job completed. Langeler testified that it was common practice for Edison to provide the cleavice and fork bolt to the general contractor who would install them; but that in this case the cleavice had already been installed by Edison. He said it was done both ways, however. He also testified that in this case Edison did not go back and check the installation of the cleavice before the independent contractor did his work.

Langeler further testified to the safety rules and regulations of Edison pertaining to electrical pole installation and maintenance. He stated that the regulations imposed upon his employees are that: (1) before a man can climb a pole, he has to have a hard hat on; (2) he has to carry rubber gloves with him; (3) he is required to wear a safety belt at all times; (4) when he comes into close contact with live wires, he is required to put his rubber gloves on. He stated that these rules are enforced and recognized in the industry.

■■ ■ Plaintiff relies upon the doctrine of *res ipsa loquitur* for recovery. The doctrine, in a proper case, permits "proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant * * * ." (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449.) The requisite elements have been stated:

> "(1) that the event must be of a kind which ordinarily would not occur in the absence of someone's negligence; (2) that the instrumentality which caused the injury must have been within the exclusive control of the defendant; and (3) that the plaintiff was in the exercise of ordinary care. * * * " *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d. 656, 671.

On the record before us we find that plaintiff has met his burden of proving the first two of the elements specified. Edison does not dispute that the fork bolt is never electrified if the wires are properly attached, that is if a deadend bale is placed on the ceramic insulator. The testimony of defendant's witness, Langeler, that the only time he found electrification to have occurred was when the pole was struck by a truck, illustrated the necessity of a negligent act before the fork bolt could be electrified.

Control by the defendant of the cleavice which was the injury causing instrumentality was also properly proved. The proof of the control by the defendant does not mean proof of actual physical control at the time of the accident "if the instrumentality or dangerous agency is one which it is defendant's responsibility to maintain at all times and which responsibility cannot be delegated by consent, agreement or usage." (*Metz*, at 450. See also *Cobb v. Marshall Field & Co.* (1959), 22 Ill.

App. 2d 143, 153-54; *Ostendorf v. Brewer* (1977), 51 Ill. App. 3d 1009, 1012.) Edison cannot properly claim that it satisfied this responsibility because it completed the hookup 30 days before the accident and because none of its employees returned to the job site between the time of the hookup and the time of the injury. Essentially it appears that only Edison employees worked on the line which should properly and safely have ended with the deadend bale securely attached to the insulator and not touching the fork bolt. It would appear that under the circumstances it was Edison's sole responsibility to maintain the cleavice at all times prior to the accident. Admittedly, plaintiff shared the responsibility with Edison for installing the three-phase system at the service pole. However, there is no evidence in the record that plaintiff also shared the responsibility for maintaining the cleavice. The surrounding circumstances indicate that plaintiff's task was simply to install a riser on the service pole and that he in no way attempted exercising intervening control over the deadend cleavice.

The crux of the case is whether the plaintiff was contributorily negligent. Contributory negligence as a part of the negligence law in Illinois requires that the "plaintiff must plead and prove that he was in the exercise of due care, as measured by the objective reasonable-man standard, for his own safety." (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 424.) The circumstance that a plaintiff elects a more dangerous way of doing his work when he has safer choices available to him may result in the finding of contributory negligence. (*Reid v. Employers Mutual Liability Insurance Co.* (1973), 14 Ill. App. 3d 174, 179, *aff'd on other grounds* (1974), 59 Ill. 2d 194.) Ordinarily, contributory negligence is a question of fact to be determined by the jury and will be taken from them only where the evidence viewed in its aspects most favorable to the moving party so overwhelmingly favors him that no contrary verdict based on the evidence could stand. *Olson v. Ortiz* (1978), 60 Ill. App. 3d 787, 789. See also *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

■■ Electricity is, of course, considered an inherently dangerous force, with the result that Edison as its supplier is charged with exercising a high degree of care. (*Rowe v. Taylorville Electric Co.* (1904), 213 Ill. 318, 322; *Sprague v. Commonwealth Edison Co.* (1978), 59 Ill. App. 3d 342, 347.) However, it has long been held that the dangers of electrical energy and wires are matters of common knowledge to persons of ordinary intelligence and experience. (*Stambaugh v. Central Illinois Light Co.* (1976), 42 Ill. App. 3d 582, 586; *Withey v. Illinois Power Co.* (1961), 32 Ill. App. 2d 163, 172.) It has also been held that a trained and experienced electrician is held to the standard of care which a reasonably prudent person of like experience would exercise. *Pressley v. Bloomington & Normal Ry. & Light Co.* (1916), 271 Ill. 622, 633.

■■ Under the facts in this case we conclude that the trial court properly submitted the question of Edison's negligence and plaintiff's contributory negligence to the jury, and that the evidence supports both the jury's finding on the special interrogatory and the general verdict.

The jury could properly have concluded on this record that Edison was guilty of general negligence in creating the electrical charge through the fork bolt. It is clear that the wire should have been on the insulator to avoid an inference of negligence and Edison could not explain why at the time of the incident it was not. But the jury could also have properly concluded that plaintiff was guilty of contributory negligence because he was an experienced electrician whose job took him to an area on the pole within a few feet of the upper wire which he knew to be live and within 10 inches of the lower wire which he merely assumed not to be live although a visual inspection would have shown the danger. Plaintiff brought himself within the zone of danger of electrical shock. The fact that he did not contact any wire directly did not excuse him from exercising due care. *Stambaugh v. Central Illinois Light Co.* (1976), 42 Ill. App. 3d 582, 587; *Withey v. Illinois Power Co.* (1961), 32 Ill. App. 2d 163, 172.

The jury could also consider in determining whether plaintiff was guilty of contributory negligence that the plaintiff elected a more dangerous way of working when safer choices were available to him. (See *Reid v. Employers Mutual Liability Insurance Co.* (1973), 14 Ill. App. 3d 174, 179. See also *Day v. Barber-Colman Co.* (1956), 10 Ill. App. 2d 494, 511.) There was evidence of industry standards which plaintiff did not rebut. Included were the regulations that rubber gloves were to be used when a worker was in close contact with electrical wires; all wires were to be considered live; and the worker was to attach a safety belt when he came within approximately 2 feet of wires. While the plaintiff's employee testified that he often worked without rubber gloves he conceded that it was additional protection. It is unrefuted that plaintiff did not follow any of the customary safety cautions, all of which were available to him, and which would have prevented the shock and consequent fall. He elected instead a more dangerous way of doing the job, received a shock, and fell, causing the injury of which he complains. Under these circumstances the plaintiff was not entitled to a directed verdict as a matter of law, nor was he entitled to judgment notwithstanding the verdict.

We therefore affirm the judgment.

Affirmed.

NASH and LINDBERG, JJ., concur.