Appellee, Bert Moudy, obtained a judgment for personal injuries against The New York, Chicago and St. Louis Railroad Company in the circuit court of Ford county. On appeal to the Appellate Court for the Third District the judgment was affirmed. We have allowed an appeal to this court. The parties will be hereafter referred to as plaintiff and defendant.
The plaintiff was injured at a railroad crossing October 11, 1939, at about nine o'clock A.M. In his complaint he charges that the defendant permitted high weeds and shrubs to grow on the railroad right of way, so that the plaintiff, in approaching the railroad track, was unable to see the train coming, and that the defendant operated its train up to and upon the crossing without blowing a whistle and ringing a bell, and that through such negligence the defendant's train ran against the automobile of plaintiff, while he was crossing the track, and destroyed it, and injured the plaintiff, while he was in the exercise of due care. The second count is the same as the first count except it omits the allegations with respect to the weeds and shrubbery along the right of way.
The railroad ran east and west, the highway crossing it, No. 115, ran north and south and joined with highway No. 9 about one-half mile south of the railroad. On the *Page 448 
morning of October 11, 1939, the plaintiff in company with Sylvester Mailes, was riding from his home southeast of Paxton to Melvin, north of the railroad on route No. 115. The day was clear and the pavement was dry. He was driving a 1934 Ford V-8 sedan, when, shortly before nine o'clock he approached the railroad crossing from the south. He was familiar with the road and crossing and had passed over it many times. He testified he did not hear a bell or a whistle sounded, and said as he approached the crossing he was driving about 30 miles per hour, and when he was from 100 to 200 feet south of the track he slowed down to the extent he was going 12 or 15 miles per hour; that he increased his speed when he was about 100 feet from the track until he was going about 22 to 25 miles per hour; that when he was 60 feet from the track he heard the roar of the train, and he knew it was coming from the east, and that he then applied his brakes to the full extent; that he saw the train when he was about 20 feet from the track, but that his car slid forward in the neighborhood of 60 feet after applying his brakes. His automobile hit the front part of the engine, and was thrown off to the west side of the road in the ditch bordering the railroad track. Plaintiff was seriously injured and his companion killed.
He also testified he increased his speed when he was about 100 feet distant from the track in order to clear it in good time, and in answer to what he meant by that said he did not want to come in contact with the train, and, for that reason, increased his speed. He testified his brakes were in good condition, and had been fixed three days previously, and that running 22 to 25 miles per hour would take 100 to 120 feet to stop. He also claimed that to his right there was a cornfield, and that this together with the shrubs and the raise in the ground some distance to the east obscured his view of the crossing. There was a *Page 449 
railroad-crossing sign on the east side of the highway south of the crossing. After the collision there was a dark mark along the highway for a distance of 60 feet south of the railroad track, showing where one tire had slid along the pavement.
The foregoing is the most favorable view of plaintiff's testimony, but it cannot be overlooked that he repeatedly stated he saw the train when 60 feet from the track; and, also, while he testified there were obstructions to the view down the track, he was not asked, nor does he testify, whether a train could be seen, or was seen, by him in spite of the weeds along the track.
These facts are undisputed, and based upon them the Appellate Court held that the testimony showed the plaintiff had used reasonable care to have his car provided with reasonably good brakes, although he testified that it would require from 100 to 120 feet to stop his car traveling 22 to 25 miles per hour, with brakes in good condition; and that under such circumstances the trial court would not have been warranted in finding the plaintiff was not in the exercise of due care, or was guilty of contributory negligence at or just prior to the time of the accident. The defendant, however, claims the admitted facts, as well as many others shown on behalf of defendant, establish the plaintiff was either guilty of contributory negligence, or that under the admitted facts the alleged negligence of the defendant was not the proximate cause of the accident.
Appellee claims the question of proximate cause is being raised for the first time in this court. The briefs disclose the defendant has contended at all times the plaintiff was not in the exercise of due care. The Appellate Court, however, as pointed out, finds in substance that he was in the exercise of due care, because the brakes did not stop the car in time to prevent the accident. *Page 450 
The evidence of the defendant discloses beyond question the field at the east side of the road did not contain corn, but contained beans. This is established by the elevator man who bought the beans, the farmer who raised them, and by other witnesses; and four photographs in the record show this beyond any question. We know that beans ready to harvest furnish far less interruption to view than corn at a like period of time. The top of the train was fourteen feet above the tracks, and the sight range of a man in an automobile is four and one-half feet above the ground. There was an embankment on the east side of the paved road about four feet high. Witnesses as well as the photographs disclose the train could be seen at any time for a distance of one thousand feet eastward down the track while an automobile was five hundred feet or less from the crossing. The section foreman and others testified the weeds along the right of way were cut the latter part of August. The engineer, fireman, expressman and conductor all testified the whistle was blown, and the two former testified the bell was put on automatically at Paxton, and rang continuously from there until after the time of the accident.
The deposition of the plaintiff was taken April 16, 1940, and the court reporter who took the same in shorthand testified that at that time the plaintiff testified he never had seen the train before it struck him; that he did not have any remembrance of the train at all, and when asked in what distance he could have stopped the car, if driving 35 or 40 miles per hour on the same kind of pavement, testified in 15 or 20 feet; and when asked in what distance he could stop it going 15 to 20 miles per hour said he could do it almost on the spot owing to the brakes. The evidence shows the train was going about 60 miles per hour; that that was its ordinary running time; that it was six or seven minutes late, but not trying to make up *Page 451 
time; and the fireman testified he saw the car coming towards the track when it was about 200 feet south, and that it was running about 60 miles per hour. None of these facts were commented upon by the Appellate Court in disposing of appellant's contention the verdict was manifestly against the weight of the evidence.
The question presented in this court is whether, upon facts in the record which are admitted to be true, the plaintiff is entitled to recover. This involves the consideration of whether the negligence of the railroad company, if proved, was the proximate cause of the injury, under the most favorable view of the plaintiff's evidence, and whether the plaintiff has shown he was in the exercise of due care at the time of his injury.
It is clear from the opinion of the Appellate Court that it believed the plaintiff was in the exercise of due care, if he could stop his car going at a rate of speed of 22 to 25 miles per hour within 60 feet, in spite of his testimony it would take 100 to 120 feet in which to stop it. This, however, also overlooks the duty of the plaintiff to have the brakes upon his motor vehicle adequate to stop his car within 30 feet while traveling at 20 miles per hour, as required by the statute. (Ill. Rev. Stat. 1939, chap. 95 1/2, par. 211-B1, sec. 114.) The question of whether plaintiff was exercising due care, and also whether the failure of the brakes to stop the car within 60 feet, must also be considered in the light of his testimony that at 100 feet from the track he increased his speed from 12 to 15 miles per hour to 22 to 25 miles per hour to clear the track, so he would not come in contact with the train. This statement of the plaintiff involves separate inferences, — either he saw the train coming and attempted to get across in front of it, or, knowing there was a railroad track in front of him he speeded up at a time when, according his own testimony, he could see nothing in either direction. Either *Page 452 
of these ideas presents a very grave question as to whether he was in the exercise of the degree of care required at railroad crossings.
The rule has long been settled in this State, and is generally recognized, that railroad crossings are dangerous places, and that one crossing the same must approach the track with the same amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a crossing it is generally condemned as negligence. The law requires the traveler, under such circumstances, to make diligent use of his senses of sight and hearing, to retain proper control of his vehicle, and to exercise care commensurate with the danger to be anticipated. Provenzano
v. Illinois Central Railroad Co. 357 Ill. 192; Greenwald v.Baltimore and Ohio Railroad Co. 332 Ill. 627; Carrell v. New YorkCentral Railroad Co. 384 Ill. 599.
When a railroad train and a person traveling on a highway each approach the crossing at the same time it is the duty of the traveler, in obedience to the known custom of the country, to stop, and not attempt to pass in front of the advancing train.(Newell v. Cleveland, Cincinnati, Chicago and St. Louis RailroadCo. 261 Ill. 505.) One who has an unobstructed view of the approaching train is not justified in closing his eyes in crossing a railroad track in reliance upon the presumption that a bell would be rung or a whistle sounded, and offer the presumption as an excuse for not exercising care. (Schlauder v.Chicago and Southern Traction Co. 253 Ill. 154; Greenwald v.Baltimore and Ohio Railroad Co. 332 Ill. 627.) Likewise it is clear that if the view of the crossing is obscured, and the location of the crossing is known to the traveler, it is his duty to approach the crossing with the amount of care commensurate with the situation as it exists. The claim that care and caution by any person has been exercised *Page 453 
cannot be sustained, when the known facts disclose that ordinary care would have avoided the accident.
Applying these rules, we find that the plaintiff knew the railroad crossing, and that when he was within a distance of 100 feet and had reduced his speed to 12 or 15 miles per hour, without being able to see or hear, he suddenly increased his speed to 22 to 25 miles per hour, as he says to cross so he would not come in contact with the train, knowing or believing at such speed he could not stop in less than 100 to 120 feet. If the plaintiff is to be believed in all that he says he was simply taking the chance there would be no train, and, without being able to see a train, was relying blindly upon hearing its sound, when he knew it would be impossible for him to stop his car after he had reached the speed described by him. From his own understanding, at the time, the application of brakes would not save him. Under his own theory the accident was not caused by the failure of the brakes to work, but by not keeping his car at the speed at which the brakes would become effective. His statement that he speeded up when he was 100 feet from the track for the purpose of avoiding contact with the train, but when he was 60 feet from the track he heard its roar and put on the brakes, leads to the obvious inference that he saw the train in the distance and attempted to cross in front of it, but miscalculated its speed and distance, and then attempted, too late, to stop his car.
The theory of the Appellate Court that he was in the exercise of due care because he had a right to believe that his brakes would stop him in proper time at the speed he was going, and that their failure to act, without negligence upon his part, renders the railroad company liable is also untenable. We have frequently held that, in order for a plaintiff to recover, the defendant's negligence must have proximately caused, or contributed to cause, the injuries, *Page 454 
rather than merely causing a condition providing an opportunity for other causal agencies to act. (Merlo v. Public Service Co.381 Ill. 300; Briske v. Village of Burnham, 379 Ill. 193;Illinois Central Railroad Co. v. Oswald, 338 Ill. 270.) In theMerlo case we said: "The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence." It would be an extreme application of the law to require a railroad company operating its trains on fixed tracks, and required by the exigencies of commerce to move its passengers and commodities rapidly, to anticipate (at every grade crossing) there might be defective brakes upon every automobile approaching a crossing, which would relieve the driver of the exercise of due care, and make the railroad company liable, when not its negligence, but the traveler's lack of due care, caused the accident.
The distinction between a crossing accident occurring from lack of due care upon the part of the plaintiff, or because of an intervening cause under his control, or at least not under the control of the defendant, is so slight as to make rules applicable to them practically the same. We are of the opinion that the evidence in this case most favorable to the plaintiff fails to show that he was in the exercise of due care, or that the alleged negligence of the defendant was the proximate cause of the accident. Under such circumstances, as a matter of law, the plaintiff is not entitled to recover.
It is therefore ordered that the judgments of the Appellate Court for the Third District, and of the circuit court of Ford county be, and they are, hereby reversed.
Judgments reversed. *Page 455