PYTHIA E. COLEMAN, Exr. under the Will of Robert H. Coleman, Deceased, Plaintiff-Appellee, *v.* ILLINOIS CENTRAL RAILROAD COMPANY, Defendant-Appellant.

(No. 11892; )

Fourth District—August 9, 1973.

TRAPP, J., dissenting.

Nichols, Jones, McCown & Lincoln, of Tuscola, (Robert Mitten, Thomas J. Healey and Harrison J. McCown, of counsel,) for appellant.

Lemna & Lee, of Tuscola, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This appeal arises out of a wrongful death action brought by Pythia E. Coleman, executrix of the estate of Robert H. Coleman, deceased, against Illinois Central Railroad Company. The trial court entered judg-

ment for plaintiff upon a jury verdict in the amount of $136,000 from which the defendant appeals.

The plaintiff filed a motion to dismiss the appeal on the grounds the judgment order appealed from is not a final appealable order. Plaintiff contends that the defendant is appealing only from a denial of its post-trial motion for judgment notwithstanding the verdict and new trial instead of the judgment itself. The motion to dismiss was taken with this case and it is denied. While defendant's notice of appeal is not of model form, it complies with Supreme Court Rule 303.

On appeal, the defendant submits that the trial court should have granted its motion for a new trial, or in the alternative granted a judgment notwithstanding the verdict; that opinion testimony of plaintiff's expert witness was based upon assumptions rather than facts in evidence; and that the expert witness was permitted to testify to the ultimate issue. Defendant questions various other evidentiary rulings of the trial court.

The occurrence that gave rise to this case happened on January 16, 1970. It involved an automobile driven by Robert H. Coleman, deceased, and an Illinois Central train—the Panama Limited—at the intersection of Church Street and the Illinois Central Railroad tracks in Savoy, Illinois. The decedent had been traveling in a westerly direction on Church Street. The train was proceeding in a northerly direction. The Illinois Central Railroad tracks run in a north-south direction and roughly parallel with Route 45 as the tracks and the highway run through Savoy. The approaching road bed on the east side of the tracks is approximately six feet lower than the railroad tracks and the approach to the crossing is on a slight incline. There are three sets of tracks at the intersection: the east set is a spur track while the middle set is for northbound trains, and the west set is for southbound trains. The Panama Limited was on the middle set of tracks at the time of the occurrence. The intersection is marked with two cross bucks—one on either side of the tracks. There is one electrical wigwag signal on the southwest side of the tracks—the opposite side from which the decedent was coming. The approach to the intersection from the east was somewhat obscured by various buildings and trees which makes it difficult for a driver heading west on Church Street to view the oncoming railroad traffic, and for the railroad engineer to view oncoming Church Street vehicular traffic.

On the day of the occurrence, the weather was cold and damp; the train was one-and-one-half hours behind schedule and was traveling at a very high rate of speed (95 m.p.h.) at the time of the collision. Also, it was uncontroverted that the decedent was traveling at a very low rate of speed and that he did not stop before entering the crossing zone which he traveled every day. When the impact occurred, the rear wheels

of the decedent's vehicle were nearly on the west rail of the northbound main tracks.

At the trial, the plaintiff called a Mr. McMonagle to testify as an expert in the field of transportation engineering and planning. A hypothetical question was posed by the plaintiff and in response to it Mr. McMonagle stated it was his opinion that the railroad crossing in question was "very inadequately protected." Defendant contends that the factual foundation for the hypothetical question was insufficient to base an opinion concerning the adequacy of the protective device found at the railroad crossing in question. Upon review of the relevant testimony concerning this issue, we find that no reversible error was committed by the trial court when admitting the expert opinion testimony.

Defendant also submits that the trial court erred in permitting McMonagle to testify that the crossing was inadequately protected for this was an ultimate issue to be determined by the trier of facts. All parties agree that *Merchants National Bank of Aurora v. E. J. & E. Ry. Co.*, 49 Ill.2d 118, 273 N.E.2d 809, is dispositive.

In *Merchants National Bank*, the supreme court held that it was proper for the trial court to admit an expert opinion when it dealt with an ultimate issue of the case. The court reasoned that even in a case when it is necessary for an expert to testify the "trier of fact are not required to accept the opinion of the expert * * *." Expert testimony dealing with ultimate issues does not usurp the function of the jury. Defendant contends that this case is distinguishable from the *Merchants National Bank* case in that the expert testimony found here does not fall within the rule announced in *Merchants.*

■■ The expert first concluded in answer to the plaintiff's hypothetical question that the crossing was "very inadequately protected." This is the same conclusion that the same expert made in the *Merchants* case. Then the expert went on to specify the reasons for his conclusions and surmised that more sophisticated protective devices should have been installed under the circumstances at the railroad in question. The defendant asserts that the import of the expert's testimony was that the Illinois Central Railroad was negligent. One can draw this inference from the expert testimony, and perhaps the jury did, for they found the defendant-railroad was negligent. The expert testimony in this case, as in the *Merchants* case, was directed at the issue of "whether the crossing was adequately protected." The expert in his testimony did not direct his attention to the ultimate issue of whether or not the defendant railroad was liable, for that is the duty of the jury. We find the expert did not invade the province of the jury.

■■ The defendant submits that numerous other rulings made by the

trial court concerning evidentiary matters were erroneous; also, that the trial court erred when it refused to grant a new trial or alternatively enter a judgment notwithstanding the verdict. We find no error in the court's application of the *Pedrick* test to the evidence found in this case, therefore the verdict must stand. The record reveals that no reversible error of law was committed below, thus, a discussion of these issues would in our judgment serve no useful purpose and an opinion thereon would have no precedential value. Accordingly, pursuant to Rule 23 of the Supreme Court, the judgment of the circuit court of Douglas County is affirmed.

Judgment affirmed.

SIMKINS, J., concurs.

Mr. JUSTICE TRAPP dissenting:

It has been consistently held that the plaintiff has the burden of proving the exercise of ordinary care, and without affirmative evidence of such the injured party may not recover. (*Overman v. Illinois Central R.R. Co.*, 34 Ill.App.2d 30, 180 N.E.2d 213; *Bachman v. Illinois Central R.R. Co.*, 132 Ill.App.2d 277, 268 N.E.2d 42.) In the absence of evidence of this element of the case, there is contributory negligence as a matter of law. (*Tucker v. New York C. & St. L. R.R. Co.*, 12 Ill.2d 532, 147 N.E.2d 376.) In *Siebens v. Konicek*, 108 Ill.App.2d 300, 247 N.E.2d 453, plaintiff contended that there was no evidence that he *had failed* to exercise due care. It was said that there was no presumption that relieved him of such burden of proof.

The principal opinion notes the obstructions to view. It is stated that the duty to exercise care must be measured by the known hazards. (*Tucker v. New York, C. & St. L. R.R. Co.*, 12 Ill.2d 532, 147 N.E.2d 376; *Bachman v. Illinois Central R.R. Co.*, 132 Ill.App.2d 277, 268 N.E.2d 42.) Here, the decedent had used the crossing substantially ten times a week for five years. It would appear that no hazard present would be unknown to him. All witnesses in the vicinity at the time and place heard the blowing of the train whistle, except one man who could not recall that whistling for the reason that he worked beside the crossings and he heard train whistles all day. Such witnesses as were at the scene just before the collision testified that the wigwag signal was functioning in a normal way. The evidence is that it was activated from a point 3300 feet south of the crossings. Photographs in evidence plainly show that the wigwag signal was clearly visible on the highway approach to the crossing.

Photographic exhibits show a substantial view of the tracks on which

the train approached from a point east of the east spur track which was east of the main track. This was not a high-speed thoroughfare and all of the evidence is that decedent drove slowly as he approached, but a witness observed that no stop lights showed as he went upon the crossing.

A disinterested witness standing near the crossing testified that the decedent looked straight ahead as he drove on to the tracks. The engineer and fireman also testified that decedent did not look up or toward the engine until the rear wheels of his car were on the westerly track of the main line. Such affirmative, undisputed evidence of failure to look was considered significant in *Harsha v. Peoria & Eastern R.R. Co.*, 131 Ill.App.2d 920, 269 N.E.2d 733. In *Pedrick*, 37 Ill.2d 494, 229 N.E.2d 504, plaintiff's evidence of the exercise of ordinary care was deemed "equivocal." It was then determined that the trial court should have directed a verdict or entered judgment *n.o.v.* Here, there is no evidence the decedent had looked, and there is actual affirmative evidence that he did not exercise ordinary care. Upon such *Pedrick* should control.