(No. 46198.–

PYTHIA E. COLEMAN, Exr., Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed Sept. 27, 1974.—Rehearing denied Nov. 26, 1974.*

GOLDENHERSH, J., dissenting.

14

Nichols, Jones, McCown & Lincoln, of Tuscola (Robert Mitten, Thomas J. Healey, and Harrison J. McCown, of counsel), for appellant.

Lemna & Lee, of Tuscola, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The circuit court of Douglas County entered judgment on a jury verdict in the amount of $136,000 in favor of plaintiff, Pythia E. Coleman, executrix under the will of Robert H. Coleman, who was killed when his automobile was struck by a train operated by the defendant, Illinois Central Railroad Company. The Fourth District Appellate Court affirmed with one justice dissenting. (13 Ill. App. 3d 442.) We granted leave to appeal.

Defendant contends that plaintiff failed to prove due care on the part of her decedent and the trial court erred in denying its motions for a directed verdict and its post-trial motion for judgment *n.o.v.* It also alleges error in the admission and exclusion of certain testimony. The appellate court summarized the evidence as follows:

"The occurrence *** involved an automobile driven by Robert H. Coleman, deceased, and an Illinois Central train—the Panama Limited—at the intersection of Church Street and the Illinois Central Railroad tracks in Savoy, Illinois. The decedent had been traveling in a westerly direction on Church Street. The train was proceeding in a northerly direction. The Illinois Central Railroad tracks run in a north-south direction and roughly parallel with Route 45 as the tracks and the highway run through Savoy. The approaching

road bed on the east side of the tracks is approximately six feet lower than the railroad tracks and the approach to the crossing is on a slight incline. There are three sets of tracks at the intersection: the east set is a spur track while the middle set is for northbound trains, and the west set is for southbound trains. The Panama Limited was on the middle set of tracks at the time of the occurrence. The intersection is marked with two cross bucks—one on either side of the tracks. There is one electrical wigwag signal on the southwest side of the tracks—the opposite side from which the decedent was coming. The approach to the intersection from the east was somewhat obscured by various buildings and trees which makes it difficult for a driver heading west on Church Street to view the oncoming railroad traffic, and for the railroad engineer to view oncoming Church Street vehicular traffic.

On the day of the occurrence, the weather was cold and damp; the train was one-and-one-half hours behind schedule and was traveling at a very high rate of speed (95 m.p.h.) at the time of the collision. Also, it was uncontroverted that the decedent was traveling at a very low rate of speed and that he did not stop before entering the crossing zone which he traveled every day. When the impact occurred, the rear wheels of the decedent's vehicle were nearly on the west rail of the northbound main tracks." 13 Ill. App. 3d 442, 443-444.

During the trial of this case there was presented considerable testimony concerning the physical condition of this crossing and the view available to approaching motorists of oncoming trains. In summary the testimony shows that a north-south drive intersects Church Street from the south about 60 feet east of the spur track. To the

east of the drive the view to the south from Church Street is obstructed by buildings and trees. On the day of the accident there was located on the railroad right-of-way adjacent to the spur track and about 200 feet south of the crossing a storage shed which partially obstructed the view of the tracks. However, when one is at the drive 60 feet east of the spur track there is a clear view of the tracks for 200 feet from the building to the crossing, and from south of the building the track can be seen for a short distance. When one is 6 or 7 feet east of the spur track there is a clear view down the tracks to the south. The spur track is 14½ feet east of the northbound main tracks.

There were several eyewitnesses to this accident. Audrey Ernest, a school teacher, testified that she was driving west on Church Street about one-half to one block behind Coleman's car. As she approached the train crossing she heard the horn of the train and stopped her car. Coleman's car never stopped before entering the crossing and the car's brake lights never came on. Clare Messer testified that while sitting in the Savoy Grain Company office on the northeast corner of the intersection he saw the Coleman car upon the crossing and the driver was looking straight ahead and never turned his head before the collision. Robert Krabbe, who was driving east, stated that he stopped his car at the crossing when he heard the train approaching and saw the wigwag signal operating. He saw the Coleman car come across the tracks from the opposite direction and the car never stopped while within his vision. James Taylor, the fireman on the Panama Limited stated that he first saw the Coleman car when it was 15 or 20 feet east of the spur track. He observed that Coleman was looking straight ahead and did not look south until his car was upon the west rail of the northbound track. The car never stopped while he observed it.

The defendant contends that not only has the plaintiff not produced evidence of due care by her decedent but the

evidence presented affirmatively shows a lack of due care. It is plaintiff's theory that because of the visual obstructions near the crossing, the icy condition of the crossing, and decedent's slow rate of speed, the question of due care was a jury question.

In prior decisions this court has consistently recognized the rule of law that railroad crossings are dangerous places and that in crossing them a person must exercise a degree of care commensurate with the danger to be anticipated. (*Tucker v. New York, Chicago and St. Louis R.R. Co.*, 12 Ill.2d 532, 534; *Moudy v. New York, Chicago and St. Louis R.R. Co.*, 385 Ill. 446, 452.) Ordinarily a person traversing a crossing without stopping to look and listen for approaching trains is, as a matter of law, contributorily negligent. However, where the view of the crossing is obstructed or where the plaintiff is distracted or misled without his fault, his failure to look or listen may be excused. In such instances, it is for the finder of fact to determine whether he acted prudently. *Tucker v. New York, Chicago and St. Louis R.R. Co.*, 12 Ill.2d 532; *Humbert v. Lowden*, 385 Ill. 437; *Gills v. New York, Chicago and St. Louis R.R. Co.*, 342 Ill. 455.

Our examination of those cases holding that a plaintiff who failed to look and listen for an approaching train was not contributorily negligent as a matter of law leads us to the conclusion that they are not applicable here. In *Humbert v. Lowden*, upon which plaintiff heavily relies, there was evidence that crossing gates and crossing bells did not function prior to the collision. The court held that it was for the jury to decide whether the plaintiff's failure to look was excused by the malfunction of those warning devices.

In *Gills* the plaintiff had stopped for a train going east and after looking both ways was struck as he proceeded across the crossing by a train going west, which apparently was concealed from view by the rear of the eastbound train. Because of the obstruction to plaintiff's view, the

question of his due care was left to the jury. Similar facts were present in *Chicago and Northwestern Ry. Co. v. Hansen,* 166 Ill. 623, and *Chicago and Alton R.R. Co. v. Pearson,* 184 Ill. 386.

In this case the testimony of the various witnesses plus our own examination of the exhibits convinces us that by the time plaintiff's decedent was within 6 or 7 feet of the eastern rail of the spur track, or 20 to 25 feet from the northbound track, his view to the south was totally unobstructed. Had he looked to the south at this point he surely would have seen the approaching train, and could have avoided the accident. The wigwag signal located at the crossing was in operation; the air horn on the locomotive was blowing; its bell was ringing and the oscillating and stationary lights on the front of the locomotive were on. The deceased did not stop at the crossing. He did not apply his brakes. He did not look to the south as he approached the tracks. He was familiar with this crossing, having crossed it several times each week during the five-year period before the accident.

There is no evidence in the record to indicate that the deceased looked for the oncoming train, and we find no evidence which under the authority of the cases referred to above would excuse such a failure. Not only is there an absence of evidence of due care on his part but there is, in fact, affirmative evidence of lack of due care in not looking south but looking straight ahead and in not heeding the plainly audible horn and the plainly visible wigwag crossing signal. There being no evidence of due care, plaintiff's decedent was contributorily negligent as a matter of law. (*Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494; *Briske v. Village of Burnham,* 379 Ill. 193.) Consequently, the trial court erred in not directing a verdict for the defendant or entering judgment notwithstanding the verdict.

Because of our conclusion that defendant was entitled

to a judgment in its favor, we need not consider the remaining allegations of trial error.

The judgments of the circuit and appellate courts are reversed.

*Judgments reversed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. On this record the question of whether the plaintiff's decedent exercised due care was clearly one of fact for the jury. In addition to the facts reviewed in the opinion of the appellate court, and in the majority opinion of this court, the testimony shows that there were chuck holes 5 to 6 inches deep in the westbound lane of traffic on the crossing, that the crossing was slippery with ice and that no salt or cinders had been spread on its surface. Kenneth J. Patton, a safety supervisor at U.S. Industrial Chemical's plant at Tuscola, where plaintiff's decedent was employed, testified that he made "sightings" at the scene and that the view to the south was obstructed by trees and buildings from a point approximately 300 feet east of the crossing to the east line of the right-of-way and that the view from the east line of the right-of-way was obstructed by a utility pole, a railroad signal box and a warehouse building. A State trooper testified that at a point 15 feet east of the spur track the warehouse building obscured his vision of a train coming from the south. A witness called by defendant testified that when traveling west "in order that you could see down the track to the south your front wheels would be approximately 6 inches beyond the east rail" (indicating the spur track). There was testimony that the light in the wigwag signal consisted of a 10-watt bulb, and a witness who saw it from a point 20 feet east of the spur track approximately one hour after the occurrence could see no light burning.

The majority recognizes that when the view of the crossing is obstructed due care is to be determined by the

20

finder of fact. (59 Ill.2d at 17.) The result reached by the majority is a clear violation of the rule enunciated in *Pedrick* (37 Ill.2d 494), and the judgments of the circuit and appellate courts should be affirmed.