JOHN D. OSZART, Plaintiff-Appellant, *v.* CHICAGO AND NORTH WESTERN TRANSPORTATION CO. *et al.*, Defendants-Appellees.

Second District    No. 76-258

Opinion filed May 9, 1977.

Donald C. Dowling, of Dowling & Safanda, of St. Charles, for appellant.

James P. Daley and Ronald J. Cuchna, both of Chicago, and James F. Whitfield, of Wheaton, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff sued Chicago and North Western Transportation Co. and the City of St. Charles for personal injuries he received when he was struck by a Northwestern train at a crossing in the City of St. Charles. This appeal results from the judgment of the trial court granting summary judgment in favor of both defendants.

The plaintiff was 18 years old at the time of the accident, November 24, 1974. He had been living in St. Charles in the vicinity of the 13th Street crossing for some three or four months and he stated in his deposition that he had driven over that crossing some 10 or 11 times.

The plaintiff alleges negligence on the part of the City in not providing a proper and safe grade at the crossing where he was struck and in failing to have street markings on the pavement, warning of the railroad crossing, as required by Rule 313 of General Order 138 (Revised August 22, 1973) of the Illinois Commerce Commission, which reads:

> "The public authority having a duty of maintaining the approach to a grade crossing is required, where practicable, to place pavement markings consisting of a cross and the letters "RR" in accordance with current applicable standards."

The crossing was unguarded, having no gates, bells or lights. There were cross-buck signs denoting a railroad at the approach to the crossing on both sides. The depositions of witnesses indicated the train was going between 20 and 30 miles per hour as it approached the 13th Street crossing. The plaintiff was going about 10 miles per hour, according to his deposition, and the estimate of a witness, Robert Thorsen, who saw the plaintiff's car a second or two before the train came through the crossing. This witness, who was driving in the same direction approximately a block (possibly 450 feet) behind the plaintiff, testified that he saw the locomotive's lights when he was something less than a block away from the crossing. He also saw that the gates were down on North Avenue (the

next crossing west) when he was about 50 to 75 feet south of the track. At that point his view was unobstructed to North Avenue, about 600 feet west, although a little further south of the tracks his view to the west would have been obscured by a building occupied by Standard Oil Co.

The plaintiff testified in his deposition that he looked to his left—from which direction the train was approaching—but did not see the train or its headlights and did not hear a bell or whistle. He said the train came upon him suddenly "like a big monster that jumped out of the sky." It is apparently the plaintiff's theory that the difference in levels between the street as it approaches the tracks and the railroad bed is such that the locomotive headlight beam was clear above his line of vision when he looked to the west and therefore he did not see anything but darkness. There is some uncertainty whether the plaintiff is contending that he looked and did not see because of the building obstructing his view to the west or whether his theory is that he could not have seen in any event because the elevation of the railroad was such that the headlight beam— some 10 to 12 feet above the tracks, plus the elevated height of the roadbed of several feet—simply passed above his head. Both of these contentions, however, are considerably weakened by the deposition of the witness traveling behind the plaintiff, Robert Thorsen, who testified he saw the headlight when he was something less than a block south of the tracks and that he saw that the gates of the North Avenue crossing were down when he approached within 50 to 75 feet of the tracks and looked toward the west. The plaintiff himself also testified he could see three-quarters of the way to the North Avenue crossing at a point about 60 feet south of the tracks.

The scale drawing executed by Howard Meadows, an Illinois land surveyor, which was entered into the record, shows that the Standard Oil building is located about 90 feet straight south of the tracks, however, because 13th Street runs at an angle northwest, the northeast corner of this building would not appear to obscure a driver's view to the west at a distance of less than 100 feet south of the tracks. The witness Thorsen testified he looked to the west at a point 50 to 75 feet south of the crossing and had an unobstructed view of the tracks down to North Avenue where he could see that the crossing gate there was down. He also observed the headlights of the locomotive when he was somewhat further south of the crossing, just after turning from Indiana Avenue onto 13th Street, a distance, according to the scale drawing, of some 400 to 450 feet south of the tracks. The plaintiff testified he looked to the left when approaching the tracks but did not see anything. Yet, the evidence of several witnesses, including that of Thorsen, established what it would be logical to expect at 7:30 on a November evening—that the headlight of the locomotive was lit and plainly visible to anyone looking down the tracks to the west.

Indeed, the plaintiff does not dispute that the locomotive had its headlight on. Rather, he attempts to explain his own failure to observe it by the theory that the beam of the light passed above his head because of the elevation of the tracks and was not visible from his automobile. This is manifestly contrary to human experience: the beam from a headlight is plainly observable at a modest heighth of 14 to 16 feet and at a distance of 200 to 300 feet. We do not accept the theory that the headlight was invisible due to the angle of vision from the car to the locomotive headlight. If this were true the headlight of an automobile at the top of a rise of 20 feet or so would not be visible to another motorist approaching the rise because of the angle. Actually, however, it is plainly visible to the approaching motorist, as the motorist looks at the source of the light rather than the beam it throws. This is obviously true with the headlight of a locomotive. We are of the opinion that one who looked down the tracks at any point from 100 to 10 feet south of the tracks could not help but see the headlight of the locomotive in this case, in spite of its elevation.

In this appeal we are not required to weigh the issue of the defendants' negligence but rather to determine whether the plaintiff was guilty of contributory negligence as a matter of law. This is not to imply that the defendants or either of them are lacking a defense on the merits, but simply that the case comes to us on an appeal from summary judgment based on a finding that the plaintiff was guilty of contributory negligence and if the trial court's ruling was correct on that issue, the issue of the defendants' negligence need not be considered. In this State we do not have the comparative negligence doctrine and the plaintiff must plead and prove his own freedom from contributory negligence in order to recover. That issue having been resolved against the plaintiff in the trial court, it now becomes the focal point of this appeal as to each of the defendants.

Previous cases, involving unguarded railroad crossings, do not control the case before us since the facts are never the same in any two cases. However, standards of care required of a person for his own safety in traversing a railroad crossing have been set forth in general terms and applied to a particular set of facts in many cases, and where the circumstances are reasonably similar to the facts before us, these cases may justifiably be used as a guide to determine negligence, or freedom therefrom, in the immediate case.

The issue of contributory negligence is often raised in such cases since the railroad train has little or no maneuverability as compared to an automobile and many grade crossings are legally left unprotected, a fact well known to the public. Hence, the inference often arises that the accident would not have occurred if the plaintiff had been in the exercise of due care. The plaintiff is thus often carrying a difficult burden of

negative proof in such cases, but the nature of the case makes this inevitable. In the case before us the plaintiff has the burden of explaining away the inference of negligence which arises either if he saw the train and he did not stop, or if he failed to see the train at all. He attempts to show his own freedom from negligence by contending his vision was obstructed by a building southwest of the crossing, however, his own testimony, the testimony of Robert Thorsen, driving behind him, and the scaled drawing of the land surveyor all established that the obstruction was not by any means total but obstructed a view westward only at a certain point, allowing beyond that point a view of the tracks westward which gave a good margin of safety to see the train long before being committed to the crossing. In similar cases the plaintiff has not been held to be relieved of his contributory negligence in failing to observe the train from the vantage point which did remain to him.

Thus, in *Tucker v. New York, Chicago & St. Louis R.R. Co.* (1957), 12 Ill. 2d 532, there were various buildings and a depression to the right of the plaintiff (from which direction the train came) which at certain points might obstruct a clear view of an approaching train. However, the court found from the evidence that at points 17 feet and 10 feet from the tracks, the plaintiff had a clear view for one-fourth of a mile down the tracks, therefore it sustained the appellate court's judgment that the plaintiff was guilty of contributory negligence as a matter of law. The case of *Devore v. Toledo, Peoria & Western R.R.* (1961), 30 Ill. App. 2d 409, is also similar to the case at hand in that buildings obscured part of the view down the tracks in the direction from which the train came. The court noted that where special conditions create an extraordinary hazard more than cross-buck signs may be required and the absence of such special precautionary measures may constitute negligence on the part of the railroad under ordinary rules of negligence, irrespective of the requirements of the Illinois Commerce Commission. On the other hand, however, the court said, the negligence of the railroad does not excuse the plaintiff from the duty to exercise due care in his own behalf. The court determined from the established facts that in spite of the obstructions, the plaintiff did have a clear view of the tracks for a distance of 145 feet at a point 61 feet south of the tracks, and a clear view again at a point 20.3 feet south of the tracks, notwithstanding the buildings along the right-of-way. Citing the familiar language of the *Tucker* case to the effect that "railroad crossings are dangerous places, and that in crossing them a person must approach the track with a degree of care proportionate to the known danger" (12 Ill. 2d 532, 535), the court held the plaintiff had not exercised the required degree of care and reversed the judgment of the trial court which had denied a motion for judgment notwithstanding the verdict.

In *Overman v. Illinois Central R.R. Co.* (1962), 34 Ill. App. 2d 30, the plaintiff-administrator contended the decedent was not guilty of contributory negligence because a line of bushes growing along the railroad right-of-way had obscured his view of the approaching train. The presence of the bushes along a portion of the right-of-way was established by photographs. However, the court found from these photographs that at a point 50 feet from the tracks and at a point 22 feet from the tracks, and at closer points, there would be a clear view of an approaching train. This court held the plaintiff guilty of contributory negligence, saying:

> "But if the view of a crossing is obscured, and the location of the crossing is known to the traveler, it is the traveler's duty to approach the crossing with the amount of care commensurate with the situation as it exists,—his duty is enhanced rather than excused by such circumstances." 34 Ill. App. 3d 30, 42.

In the recent case of *Coleman v. Illinois Central R.R. Co.* (1974), 59 Ill. 2d 13, the physical facts were quite similar to those in the case before us. As in our case, the roadbed approaching the tracks was considerably below the tracks and there were obstructions to the motorist's view. The court described these as follows:

> "During the trial of this case there was presented considerable testimony concerning the physical condition of this crossing and the view available to approaching motorists of oncoming trains. In summary the testimony shows that a north-south drive intersects Church Street from the south about 60 feet east of the spur track. To the east of the drive the view to the south from Church Street is obstructed by buildings and trees. On the day of the accident there was located on the railroad right-of-way adjacent to the spur track and about 200 feet south of the crossing a storage shed which partially obstructed the view of the tracks. However, when one is at the drive 60 feet east of the spur track there is a clear view of the tracks for 200 feet from the building to the crossing, and from south of the building the track can be seen for a short distance. When one is 6 or 7 feet east of the spur track there is a clear view down the tracks to the south. The spur track is 14½ feet east of the northbound main tracks." 59 Ill. 2d 13, 15-16.

These were more severe conditions mitigating against the driver's duty of care than in the case we consider here. Moreover, there was evidence that the approach was icy, requiring even more concentration on the part of the driver than is ordinarily required of a driver crossing tracks, and detracting from the driver's alertness as to other dangers. Nevertheless, our supreme court held the driver guilty of contributory negligence. In that case, as here, there was evidence that the driver did not stop at the

crossing, but proceeded across, without pausing. The court, using the standard applied in previous cases, concluded that the driver had been guilty of contributory negligence.

In the case at hand we believe the evidence clearly established that the plaintiff had a clear view of the tracks to the west from a point at least 60 to 65 feet south of the tracks. It is obvious that the headlight of the locomotive was lit and would have been visible to the plaintiff if he had looked to the west at any reasonable point 65 feet or less from the tracks. The speed of the train—30 miles per hour—was not so great that he could not have stopped at any point short of the tracks in time to have avoided the accident. Plaintiff testified he was going only 10 miles per hour and the witness Thorsen said he did not see the plaintiff's brake light go on just before the train came into view. Hence, it appears that plaintiff did not pause. In short, had the plaintiff been in the exercise of ordinary care for his own safety in crossing the tracks, under the standards set forth in the many Illinois cases dealing with railroad accidents, the accident would not have occurred. Whether or not there was evidence of negligence on the part of either of the defendants which would otherwise be sufficient to go to the jury, we do not determine in view of the plaintiff's failure to establish his own freedom from contributory negligence. We agree with the trial court's conclusion that the plaintiff was contributorily negligent and affirm the summary judgment in favor of each of the defendants.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD and BOYLE, JJ., concur.