THE FIRST NATIONAL BANK OF NORMAL, Adm'r of the Estate of Kenneth A. Wilson, Deceased, *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellant.

Fourth District   No. 14549

Opinion filed July 14, 1978.—Rehearing denied August 10, 1978.

Woods & Bates, of Lincoln, and Lord, Bissell & Brook, of Chicago (Dick H. Woods, Jr., Charles A. Adamek, and Hugh C. Griffin, of counsel), for appellant.

Jerome Mirza, of Bloomington, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:
Railroad crossing.
Fatality.
Wilful and wanton misconduct.
Jury found for plaintiffs.
Verdict: $402,496.84.
We affirm.

This suit was brought after Kenneth Wilson was killed when his pickup truck was struck by a passenger train at the Elm Street crossing in Atlanta, Illinois. The defendant, Illinois Central Gulf Railroad Company (Illinois Central), was the owner of the right-of-way which constituted the crossing at Elm Street.

Here are the facts.

Elm Street is a paved two-lane road running in a general east-west direction. It is not curved or marked with a center line and is used mainly by local traffic since it extends only three to four blocks on either side of the railroad tracks, terminating at a school on one side of the tracks and a residential area on the other.

The Illinois Central tracks through Atlanta consist of one main track running in a general north-south direction. There are also a few side tracks serving various local businesses and warehouses in the town. The east and west side of the Elm Street crossing are protected by standard black and white cross bucks with the words "Railroad Crossing" printed in large black letters on a white background. Below the cross buck is another sign reading "Tracks" to advise motorists of the presence of a side track 24 feet east of the main line track.

In addition to these warnings, the railroad upgraded the Elm Street crossing in 1964 by mounting a set of electric red flashers on each cross buck pole. These flashers are hooded and designed to shine toward drivers approaching the crossing from either direction on Elm Street. There is an electric warning bell on top of the cross buck pole on the east side of the crossing. The flashers for eastbound traffic are located on the right side of the highway approximately 13 feet west of the main line track.

The railroad emphasizes that an eastbound motorist on Elm Street has an unimpeded view of the tracks to his right (south) all the way to the depot, approximately 500 feet away.

On the day of the accident, Mr. Wilson had dropped his children off at school and was crossing the tracks in an easterly direction enroute to his employer's warehouse in McLean, Illinois. The time was 8:05 a.m. and the sun was rising in the east and shining into the decedent's face. An eyewitness testified that decedent's truck was traveling at normal town

driving speed (train engineer estimated 15 miles per hour) and did not slow down at any time before proceeding onto the crossing in front of the northbound Illinois Central train.

It is undisputed that at the time of the collision the two red flashers were operating, warning eastbound traffic on Elm Street of the approaching train.

The Illinois Central train consisted of one 13½-foot-high multicolored diesel engine and three similar sized passenger cars. The train was not scheduled to stop in Atlanta and was traveling approximately 73 or 74 miles per hour. The train whistle or horn was blown at the whistle post 2,820.6 feet south of the crossing and continued to be blown in the standard sequence as the train proceeded toward the Elm Street crossing. In addition, the warning bell on the engine had been turned on at the whistle post and both the headlights and the oscillating Mars light were on.

As the train entered Atlanta, the engineer and fireman were sitting in the engine room. When the train passed the depot approximately 500 feet south of the Elm Street crossing, the engineer and the fireman both saw decedent's truck at the intersection of 1st and Elm and the fireman thought that it was turning. When the truck continued east on Elm Street without slowing down or stopping, the engineer started a series of short whistle blasts and threw the train into an emergency stop. The collision occurred at the Elm Street crossing and carried decedent's truck 100-200 yards further north.

Decedent's administrator's wrongful death suit was premised upon four counts. Counts 1 and 2 alleged that the railroad was negligent, whereas counts 3 and 4 were based upon the alleged wilful and wanton conduct of the defendant. At the close of plaintiffs' evidence, the trial court granted Illinois Central directed verdicts on the negligence counts (counts 1 and 2). The record does not indicate what the trial court's basis for dismissal was although the trial judge had told counsel that he was concerned with decedent's due care for his own safety.

The trial court denied defendant's motion for a directed verdict on counts 3 and 4 of the complaint and the jury ultimately found that the railroad had acted in a wilful and wanton manner and assessed damages totalling $402,496.84.

On appeal the railroad raises numerous issues concerning the sufficiency of the evidence, the trial court's evidentiary rulings, and the trial court's ruling on various jury instructions. We will grapple with them in what we hope are logical groupings.

## EVIDENTIARY

First, the IC argues that the directed verdicts in its favor on the negligence counts are the equivalent of a ruling by the trial court that the

crossing protection was reasonable and adequate and, therefore, the railroad could not have been guilty of wilful and wanton conduct. Defendant cites no authority for this proposition and we do not believe it is a valid assertion.

The trial court neither delineated its reasoning nor entered specific findings in support of the directed verdicts, but merely stated that plaintiffs had not proved their allegations in counts 1 and 2. After viewing the evidence, we are confident that the trial court found the decedent guilty of contributory negligence as a matter of law. In spite of the fact that decedent's contributory negligence was implicit in the trial court's ruling, it was not necessary to the directed verdict to find that the railroad had in fact provided a safe railroad crossing and given reasonable warning to the decedent.

■■ The trial court may well have decided that decedent's conduct was negligent without finding that the crossing itself was adequate. For instance, even had there been no flashing lights or warning signals at the crossing the court still could have found contributory negligence by decedent's failure to see the train or heed the numerous warning whistles given by the train. Thus, the finding of contributory negligence did not estop the plaintiffs from proving wilful and wanton conduct on the part of the railroad.

At this juncture of the opinion, the distinction between simple negligence and wilful and wanton conduct should be stressed. The Supreme Court of Illinois has recently stated:

"This court has variously defined wilful and wanton conduct as that 'committed under circumstances exhibiting a reckless disregard for the safety of others' (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583), 'conduct [which] tended to show such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness' (*Lake Shore & Michigan Southern Ry. Co. v. Bodemer* (1892), 139 Ill. 596, 607), '[c]onduct [which] imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences' (*Brown v. Illinois Terminal Co.* (1925), 319 Ill. 326, 331), and conduct '[w]here the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved' and '[t]he knowledge concerning other persons [was] actual or constructive' (*Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29, 134 N.E.2d 277, 280). We need not resolve all of the fine distinctions among these definitions with yet another restatement of the wilful and wanton standard." (*Spring v. Toledo, Peoria & Western R.R. Co.* (1977), 69 Ill. 2d 290, 293-94, 371 N.E.2d 621, 623.)

In *Spring,* the court also reaffirmed Illinois decisions holding that

contributory negligence is no defense to wilful and wanton conduct.

With these various definitions in mind, the railroad argues that the evidence does not support a finding of even simple negligence on its part in failing to provide a safe crossing, let alone wilful and wanton conduct. In other words, defendant contends that there must at least be a sufficient quantum of evidence from which a jury could conclude that defendant has breached its duty of due care and was negligent before the second step of wilful and wanton misconduct can be achieved.

*Merchants National Bank v. Elgin Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 257 N.E.2d 216, gives an excellent summary of the railroad's duty to protect its crossings. The amount of protection required at a crossing is dependent upon the circumstances existing at the particular crossing at the time of the approach of the vehicle. The questions of hazard and protection are ordinarily for the jury and factors to be considered are population and traffic, physical obstruction to view, and the effect which that amount of confusion incident to railroad or other business in the area would have on the sight or hearing of ordinary signals. See also *Baker v. Norfolk & Western Ry. Co.* (1970), 120 Ill. App. 2d 296, 256 N.E.2d 887.

■■ It has been held that railroad crossings are inherently dangerous. (*Coleman v. Illinois Central R.R. Co.* (1974), 59 Ill. 2d 13, 319 N.E.2d 228.) However, it is required that a crossing be "extra hazardous" before a railroad need take "extraordinary" means to protect motorists. (*Merchants National Bank; Baker.*) To recover on a theory of wilful and wanton conduct, it is incumbent upon the plaintiff to show not only that the crossing was extrahazardous but that defendant also had knowledge of the danger, yet still allowed the dangerous condition to exist, thereby consciously disregarding the safety of others. Here, the jury found sufficient evidence to find that the railroad was guilty of wilful and wanton conduct. And that decision will not be reversed and judgment entered for defendant as a matter of law unless all the evidence when viewed in its aspect most favorable to the opponent so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

The evidence produced by plaintiffs at trial revealed the following:

(1) An exposure factor of 21,424 (estimated number of motor vehicles traversing the Elm Street crossing 10 years in the future). Expert testimony related that an exposure factor between 3,000 and 50,000 means that, in addition to a cross buck, either flashing lights *or* lights and short-armed gates must be considered;

(2) The testimony of numerous witnesses as to the difficulty of seeing the flashers because of the sun;

(3) The operation of the flashers when no through train was coming because the flashers would be triggered even though a train switched to one of the side tracks before going through the town of Atlanta;

(4) The occurrence of other accidents in Atlanta to alert the railroad to the danger of the crossing;

(5) The filing of a petition with the Illinois Commerce Commission (ICC) by the mayor of Atlanta requesting that crossing gates be installed at the Race, Vine, and Elm Street crossings and that the South 6th crossing be reopened; and

(6) Expert testimony based on a hypothetical question expressing the opinion that the crossing as it existed in November 1973 was inadequately protected. (We recognize that some of the points in plaintiffs' hypothetical are not germane to the case at hand, but the hypothetical was a close approximation of the situation as it existed at the scene at the time of the accident and defendant's counsel conducted an extensive cross-examination.)

■■ Although the defendant presented evidence (including expert opinion) to rebut and refute plaintiffs' case, we find that a jury could have reasonably concluded from the evidence, when viewed in its aspect most favorable to plaintiffs, not only that the railroad was negligent (*i.e.*, the crossing was extrahazardous), but also wilful and wanton in their failure to put crossing guards at the Elm Street crossing.

This finding is consistent with the recent Supreme Court of Illinois decision in *Spring*. There, decedent was killed when his truck was struck while it transversed the defendant's railroad track. Decedent was traveling on a dirt and gravel road and there was no evidence that the railroad had authorized the crossing of its right-of-way at that point. However, there was some evidence that the railroad (via the engineer of the train) was aware of the use of the crossing. The crossing had no warning devices or signals and high weeds had grown to within about 10 feet of the north side of the track. The railroad tracks curved slightly northward to the east of the crossing, thereby allowing the weeds to obscure even more of the track on the east side of the crossing from a driver approaching the crossing from the north. It is also significant to note that a heavy fog prevailed in the crossing area at the time of the accident.

In spite of the lack of authorization by the railroad and the scant notice afforded to it concerning vehicular traffic at the crossing, the supreme court in *Spring* found wilful and wanton conduct on the part of the railroad. It found that the following four factors sufficiently supported the jury's finding of reckless disregard in that the jury could have found: (1) that the train was traveling at excessive speed; (2) that there was limited visibility; (3) that the engineer was aware of the likelihood of the presence

of trucks crossing the track at the time and place of the accident; and (4) that there was unreasonable delay in sounding the train's whistle.

We are cognizant that there are many factual dissimilarities between the instant case and *Spring*. Most notably, the culpability of the handling of the train itself as well as the ineffective crossing protection were at issue in *Spring*, whereas we are only concerned with the adequacy of the railroad crossing. Nonetheless, the evidence in *Spring* as to the wilful and wanton conduct of the railroad was no stronger or more convincing than in the instant case, and the *Spring* opinion reflects a judicial decision to defer to the discretion and sense of propriety of the jury in such matters. Accordingly, we find sufficient evidence to support the jury's verdict of wilful and wanton conduct on the part of the defendant and therefore will not reverse the verdict and find the railroad to be free from liability as a matter of law.

■■ But defendant argues that much of the evidence introduced at trial was irrelevant and highly prejudicial and that the case must be remanded for a new trial. First, the railroad contends that the trial court erred by allowing plaintiffs' witness (the former mayor of Atlanta) to testify that five railroad crossing accidents had occurred in Atlanta prior to the date of the accident in question, and that he had informed the Illinois Commerce Commission of this fact. Defendant points out that evidence of prior accidents is not admissible to show negligence but may be introduced only for the limited purpose of showing that the common cause of such accidents was the unsafe condition or thing, and that the frequency of such accidents tends to show knowledge of such condition. *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483.) Furthermore, the facts of the prior accident including the cause thereof must be substantially the same as the accident at bar. *Moore v. Bloomington, Decatur & Champaign R.R. Co.* (1920), 295 Ill. 63, 128 N.E. 721; *Smith v. City of Rock Island* (1959), 22 Ill. App. 2d 289, 161 N.E.2d 369; *Churchill v. Norfolk & Western Ry. Co.* (1977), 46 Ill. App. 3d 781, 362 N.E.2d 356, *appeal pending* (Docket No. 49421).

Here, the railroad emphasizes the fact that plaintiff made no attempt to lay a foundation to establish any facts surrounding the prior accidents or to show that the prior accidents were substantially similar to the instant case. The railroad, we think, misses the point. The five accidents were only used as foundation for the introduction into evidence of the petition filed by the mayor with the ICC requesting that short-arm gate guards be installed at certain crossings (including Elm). Hence, the reference to the previous accidents was not specific in nature and since the accidents occurred at different crossings, it is doubtful whether a sufficient foundation could have been laid by plaintiffs to demonstrate that the accidents were similar in nature.

■■ However, the petition itself was relevant to show notice to the

railroad as it informed the company that there was concern on behalf of the town of Atlanta that the crossing protections in the city were inadequate.

■■ The determination of whether evidence is relevant is largely within the discretion of the trial court and a reviewing court will not disturb the lower court ruling unless there has been an abuse of discretion. (*Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 355 N.E.2d 547.) Here, there was no abuse of discretion and the evidence was properly received. It was then for the jury to determine the probative value of the petition on the question of notice and it was proper for the mayor to inform the jury why he had filed the petition with the ICC.

■■ The only prior accident that was examined in detail at trial was a 1972 accident which occurred at the Elm Street crossing. A proper foundation was laid by plaintiffs to introduce evidence of that case to the jury. For instance, it was the same crossing, both vehicles were eastbound on Elm Street on a winter morning, and both were struck by high speed northbound passenger trains while the flasher signals at the crossing were operating. (See *Churchill.*) This constitutes substantial similarity and the defense counsel was allowed to bring out the fact that the previous accident had occurred much later in the morning when the sun was no longer a problem. Once again, the trial court's decision to allow evidence of the prior accident before the jury was not an abuse of discretion.

■■■ The railroad also contends that the trial court erred in allowing plaintiffs to submit the conclusionary allegations of a 1968 complaint that plaintiffs' counsel had drafted and filed in a case involving a wrongful death claim at the Race Street crossing. Plaintiffs respond by arguing that the prior lawsuit was relevant to the question of what the railroad knew about the effectiveness of its flasher signal system at Elm Street crossing. Plaintiffs respond that since the same flasher system governed all three crossings in the city of Atlanta, experiences relating to the effectiveness of the signals at all of the crossings contributed to the railroad's knowledge on the subject. An examination of the record reveals that the plaintiff did limit the introduction of the evidence of the prior case to the issue of whether flasher signals had operated in Atlanta when no through train was in operation. The introduction of other judicial proceedings to serve notice on a particular point is proper. (*Churchill.*) Here, there is no question that the same warning system governed all three crossings, and, therefore, notice that the lights flashed at the Race Street crossing, even though a through train was not coming, would be notice of the same condition at Elm Street. *Ergo* the pleading was admissible for the limited purpose of showing knowledge of problems with the flasher system at the crossings in Atlanta and no abuse of discretion occurred by the trial court in allowing that evidence before the jury.

■■ As a final issue dealing with evidentiary rulings by the trial court,

defendant objects to the trial court's decision to allow seven townspeople to testify as to their experiences in trying to see the crossing flashers at Elm Street because of the sun and/or that they had seen the crossing flashers operate when no train was going over the crossing. We find the evidence to be relevant since the testimony went to the conditions of the crossing and that was a point which the plaintiffs were both entitled and required to prove.

## INSTRUCTIONAL

The railroad also strenuously objects to the trial court's handling of the jury instructions. Specifically, defendant argues that many of plaintiff's instructions were argumentative and prejudicial. We do not agree.

Jury instructions should not be argumentative or slanted. (*Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 245 N.E.2d 618; see *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369.) Defendant contends that part (b) of instruction 6A allowed the jury to consider irrelevant propositions, such as other crossings in close proximity to the Elm Street crossing. Instruction 6A reads (in part) as follows:

> "The plaintiffs claim that the decedent was killed and that they sustained damage while the decedent was free from contributory wilful and wanton conduct. The plaintiffs further claim that the conduct of the defendant was wilful and wanton in one or more of the following respects:
>
> (a) * * *
>
> (b) Although the defendant knew that flasher signals had operated at said crossing and other crossings in close proximity within the City of Atlanta when no train was approaching or traveling over the crossing, and that said warning system was inadequate to warn travelers of the approach of trains upon its tracks at the Elm Street crossing, it refused to provide reasonable and adequate warning to the traveling public of the approach of trains upon its tracks, at the Elm Street crossing."

This instruction merely informs the jury that other crossings should be considered in that flasher signals operated at the crossings in spite of the fact that no through train was coming. We have previously discussed this issue and have determined that the existence of the integrated crossing system in Atlanta permitted evidence to be introduced concerning the flasher lights at the other crossings.

Furthermore, we do not find the language to be prejudicial and we conclude that the jury was adequately informed that the instruction was merely stating plaintiffs' theory of the case. A party has the right to have the jury instructed on his theory of the case when supported by the pleadings and the evidence. *Goodrick v. Bassick Co.* (1978), 58 Ill. App.

3d 447, 374 N.E.2d 1262; *Winston v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 151, 276 N.E.2d 65.

■■ Illinois Central also objects to the wording of the special interrogatories:

> "(1) The jury will from the evidence answer the following question by writing under it, yes or no:
>> 'Was the decedent, Kenneth A. Wilson, at the time and place in question guilty of wilful and wanton conduct which proximately contributed to cause the accident and his death?'
>
> (2) Was the defendant guilty of wilful and wanton conduct which was a proximate cause of the occurrence and the death of the decedent."

The railroad emphasizes that the interrogatory with respect to the railroad, unlike the special interrogatory with respect to decedent's conduct, contained no "time and place" limitation. We find no error in this regard since the alleged wilful and wanton conduct of the railroad may have occurred at a number of different times and places. For instance, it may have occurred many months before when the railroad management decided not to put crossing guards at the Elm Street crossing. The interrogatory was proper.

■■ Next, Illinois Central criticizes the trial court's refusal to give several jury instructions relating to the decedent's duty of care. The railroad urges that the trial court erred in refusing to instruct the jury on the law applicable to the decedent's conduct in the case. Defendant contends that his instructions 25 and 26 were improperly refused.

Those instructions read thusly:

> "Where the vision of the driver of an automobile is obstructed by the sun, he is required to proceed with more caution than where he has unobstructed vision, and although the measure of care may vary with the condition creating the obstructed vision, the roadway and traffic, it should be commensurate with the situation, so as to avoid an accident." (Defendant Instruction 26.)
>
> "Where the vision of the driver of an automobile is obstructed for any cause, he is required to proceed with more caution than where he has unobstructed vision, and although the measure of care may vary with the condition creating the obstructed vision, the roadway and traffic, it should be commensurate with the situation, so as to avoid an accident." (Defendant Instruction 25.)

Although we agree with the railroad that both instructions reflect accurate statements of the law in Illinois, we find that the instructions tend to emphasize one facet of the evidence, namely that the sun had blinded the decedent so that he could not see the flashing lights at the railroad

crossing. The Illinois Pattern Jury Instruction's Committee has not recommended instructions which single out a particular item of evidence for comment, even where there is judicial authority for the instruction. IPI Civil, forward at VI (2d ed. 1968).

Moreover, we find that the jury was adequately informed concerning the decedent's standard of care. The ultimate test for jury instructions is whether they formulate a clear and adequate picture of the applicable law when viewed in their entirety. (*Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.) Here, the jury was informed that wilful and wanton conduct is a course of conduct showing an utter indifference to and conscious disregard for a person's own safety. The instructions also informed the jury that it was the duty of the decedent to both refrain from wilful and wanton conduct and to be free from wilful and wanton conduct. In addition, the following interrogatory was presented to the jury and answered in the negative:

> "Was the decedent, Kenneth A. Wilson, at the time and place in question guilty of wilful and wanton conduct which proximately contributed to cause the accident and his death?"

Thus, we find that the instructions when read as a whole formulated a clear and accurate picture of the applicable law.

■■ Finally, the railroad alleges that the trial court erred in refusing its instructions concerning the fact that both the State and the city of Atlanta had ordinances in effect at the time of the accident which required persons approaching a railroad grade crossing to exercise due care and caution. Instruction form IPI Civil 2d No. 60.01 (2d ed. 1968) sets out the instruction of statutory violations with regard to negligence or contributory negligence, but there is no similar IPI instruction for wilful and wanton conduct. The trial court refused to give such instructions because the statutory violation was evidence of negligence, and negligence and contributory negligence were no longer issues in the case due to the directed verdicts. Although there is no authority on the subject, the defendant should have been entitled to an instruction delineating decedent's duty of care, breach of which—together with the conscious disregard of his safety—could have proved the issue of contributory wilful and wanton conduct in favor of defendant.

■■ But even though a party to a lawsuit is entitled to instructions on his theory of the case, where no prejudice is shown, the refusal to give an instruction is not reversible error. (*Goodrick; Winston.*) Here, no reversible error was committed since the following instruction was given:

> "A railroad crossing is a place of danger. If you believe from the evidence that as the decedent was approaching the crossing he knew that a train approaching the crossing was so close to the crossing that it would be likely to arrive at the crossing at about the

same time as the vehicle driven by the decedent, then it was the duty of the decedent to yield the right-of-way to the train."
This instruction adequately informed the jury as to decedent's duty of care in this situation and therefore it was not error for the trial court to refuse the jury instruction.

Judgment affirmed.

GREEN, P. J., and CRAVEN, J., concur.